# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

THE SPRINGFIELD YOUNG MEN'S CHRISTIAN ASSOCIATION
*vs.* BOARD OF ASSESSORS OF THE CITY OF SPRINGFIELD.

Hampden.   November 18, 1932. — September 11, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Tax*, Exemption: literary, benevolent and charitable organization.
*Corporation*, Charitable.   *Board of Tax Appeals.*   *Evidence*, Competency.

A Young Men's Christian Association, the corporate purposes of which
were the spiritual, mental, moral, social and physical improvement of
young men, the promotion of kindly intercourse between them and
the providing of places for reading rooms, libraries, and social and
religious meetings, maintained a building containing assembly halls,
rooms for games, gymnasiums, a swimming pool, baths, a restaurant,
a spa, a library, reading rooms, class rooms, social rooms and offices;
and a dormitory consisting of two hundred thirty-four rooms, plainly
furnished, occupying thirty-three per cent of the cubical contents
of the building.   None of the building was let to tenants.   The occu-
pants of the dormitory rooms, with immaterial exceptions, were
members of the association, and, of one hundred fifty-three who so
occupied on a certain tax date, sixteen were over thirty-five years
of age, eighteen between thirty-one and thirty-five, and the rest
between seventeen and thirty.   The expense of the building as a
whole exceeded receipts, although the receipts from the dormitory
were considerably in excess of the operating expense of that part of
the building.   The dominant aim in the maintenance of the dormi-
tory and the building was to carry out the corporate purposes of the

association, and receipts were not used for any other purpose. *Held*, that, by reason of G. L. (Ter. Ed.) c. 59, § 5, Third, the association was exempt from taxation as to such building.

A clause in the charter of the association above described expressly authorizing it to provide "places for reading rooms, libraries and social and religious meetings" did not by implication prohibit it from providing dormitories.

There having been in the main adherence to the declared purposes of the association in the use of its property, a mere incidental variation due to the fact that some occupants of the dormitory were not young men did not destroy the right to exemption.

At the hearing of an application to the Board of Tax Appeals for an abatement of tax due to the exemption above described, there was no error of law in receiving testimony of directors of the taxpayer as to their dominant purpose as such officers in opening and maintaining the dormitory; and no reversible error in admitting a letter sent by the taxpayer to the assessors at their request which was at most cumulative and did not adversely affect the substantial rights.

APPEAL, filed in the Supreme Judicial Court for the county of Hampden on July 14, 1932, by the board of assessors of the city of Springfield from a decision by the Board of Tax Appeals ordering the abatement of certain taxes on real estate and personal property.

The case was submitted on briefs.

*C. V. Ryan, Jr.*, City Solicitor, & *D. E. Lavigne*, Special Counsel, for the board of assessors.

*J. E. Perry*, for the taxpayer.

RUGG, C.J. This is an appeal by the board of assessors of Springfield (hereafter called the assessors) from a decision by the Board of Tax Appeals (herein termed the board) abating certain taxes assessed against The Springfield Young Men's Christian Association (described hereafter as the taxpayer). The main issue is whether parts of real estate of the taxpayer devoted to dormitory uses for its members are subject to taxation. Certain personal property is also involved.

The findings of fact made by the board relevant to the grounds of this decision are these: The taxpayer was formed by the consolidation under the authority of St. 1891, c. 86, of two charitable corporations. It thereby became possessed of all powers and privileges previously belonging to either, and its corporate purposes thus were the spiritual,

mental, moral, social and physical improvement of young men, the promotion of kindly intercourse between them and the providing of places for reading rooms, libraries, and social and religious meetings. The real estate taxed by the assessors was a part of the central branch building, so called, used as a dormitory, and the personal property taxed consisted of the furnishings of these rooms. The maintenance of dormitories for their members has been established as a general policy of Young Men's Christian Associations throughout the United States. Membership in the taxpayer is of two classes, both consisting of men at least sixteen years of age — active, open to any man who is a member in good standing of a Protestant evangelical church; associate, open to any man of good moral character. Active members alone have the right to vote and hold office. The activities of the taxpayer include religious and educational work, boys' clubs, social meetings, athletics and physical improvement. It is allied with the Northeastern University in the maintenance of courses of instruction and also a secondary school in several subjects. It supports an extensive program of work for boys. Its central branch building contains assembly halls, rooms for games, gymnasiums, a swimming pool, baths, a restaurant, a spa, a library, reading rooms, class rooms, social rooms and offices. The dormitory consists of two hundred thirty-four rooms, plainly furnished, occupying thirty-three per cent of the cubical contents of the building. The prices charged are extremely moderate. The primary and dominant purpose of the taxpayer in maintaining these rooms was to provide a home for young men living away from home and to benefit them by shielding them from the dangers and temptations of indiscriminate rooming houses by bringing them into close contact with wholesome influences and by developing Christian character. Those with vigorous interest in the activities of the association were preferred as roomers. The rooms at first were designed for men under thirty-five years of age, subsequently reduced to thirty years; but applications of older men who would be active workers in the association would be given consideration.

The use of the rooms was a privilege extended to members, revocable at any time, and in no sense created the relation of landlord and tenant. The occupants of such rooms, with immaterial exceptions, were restricted to members. Such occupants constitute also an additional association with varied activities, officers, and several weekly meetings to promote Christian fellowship. On the tax date there were one hundred fifty-three such occupants, of whom sixteen were over thirty-five years of age, eighteen between thirty-one and thirty-five years, and the remainder between the ages of seventeen and thirty years, whose average income was $31.17 per week. A small proportion of those taking educational courses in connection with the Northeastern University and otherwise occupy rooms in the dormitory. The receipts from the dormitory were considerably in excess of the operating expenses of that part of the building, and substantially in excess of its expenses including a proportion of the general expenses fairly attributable to the dormitory. The expenses of the building as a whole always exceeded the receipts and the balance was made up out of general funds of the taxpayer derived from fees, endowment and subscriptions. Several directors of the taxpayer testified that their purpose in maintaining adequate dormitory facilities was to help young men free from home restraints by surrounding them with associations and influences stimulating to character, and that the dormitory afforded an efficient means of contact with young men in the work of the association. This was their true purpose. The concluding finding was that the taxpayer is a literary, benevolent and charitable institution; that its dominant purpose in maintaining the dormitory rooms was directly to accomplish the objects stated in its charter and in the testimony of directors; that its real estate in question was owned and occupied by it for the purposes for which it was incorporated, and that no income or profits thus gained are used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes.

These findings of fact must be accepted as true since this is not a case where all the evidence is reported. G. L. (Ter.

Ed.) c. 58A, § 13. *Commissioner of Corporations & Taxation* v. *J. G. McCrory Co.* 280 Mass. 273, 278. The question to be determined is whether there was error of law in the decision and rulings of the board.

The governing statute is G. L. (Ter. Ed.) c. 59, § 5, Third, which, so far as here pertinent, exempts from taxation "Personal property of literary, benevolent, charitable and scientific institutions . . . [and] the real estate owned and occupied by them . . . for the purposes for which they are incorporated."

Exemption from taxation is to be strictly construed and must be made to appear clearly before it can be allowed. *Dodge* v. *Commissioner of Corporations & Taxation*, 273 Mass. 187, 194.

Plainly, the taxpayer is a corporation falling within this statutory description. That is settled by *Little* v. *Newburyport*, 210 Mass. 414, 417, where a Young Men's Christian Association was involved. Its personal property was therefore exempt from taxation. The entire building was occupied by the taxpayer and not let by it to tenants. *Franklin Square House* v. *Boston*, 188 Mass. 409, 411. The difficult question is whether the occupancy of the portion of the building used for roomers in the conditions already set forth was for the purposes for which the taxpayer was incorporated as shown by its charter. The legal principle on this point running through all our cases, as stated by the court, after ample citation of authorities, speaking through Chief Justice Knowlton, in *Emerson* v. *Milton Academy*, 185 Mass. 414, 415, is "that the purposes mentioned in the statute refer to the direct and immediate result of the occupation of the property, and not to the consequential benefit to be derived from the use of it. An occupation and use of real estate to produce income to be expended for the purposes for which the institution was incorporated is not within the statute, while an occupation whose dominant purpose is directly to accomplish some one of the objects for which the corporation was established is within it. If incidentally there are results of the use which would not entitle the property to exemption, that is imma-

terial, so long as the dominant purpose of the occupation is within the statute. The dominant purpose of the managing officers of the corporation, in the use of the property which they direct or permit, is often, although not always, controlling. So long as they act in good faith and not unreasonably in determining how to occupy and use the real estate of the corporation, their determination cannot be interfered with by the courts. There may be honest differences of opinion among persons of good judgment, as to whether it is wise to use real estate in a particular way for its direct effect in promoting the purposes for which an educational corporation was established. In such cases the managing officers have the responsibility and duty of deciding. A decision plainly unreasonable, which affects the rights of third parties, might be disregarded by the court in a case of this kind, but a decision within the limits of reasonable determination should be given effect." A corporation organized and conducted without capital stock or stockholders for the purpose of providing rooms and a home for young women at a moderate cost has been held to be charitable and exempt from taxation. *Franklin Square House* v. *Boston*, 188 Mass. 409. *Thornton* v. *Franklin Square House*, 200 Mass. 465. So, also, it is a charity to provide wholesome and sanitary homes for working people and those of small means at moderate cost. *Charlesbank Homes* v. *Boston*, 218 Mass. 14. The use of dormitories for young men would in similar conditions fall within that principle. Dormitories, dining halls and boarding houses intended primarily for and actually devoted to the use and benefit of students attending incorporated institutions of· learning are exempt from taxation. *Phillips Academy* v. *Andover*, 175 Mass. 118, 125.

The assessors strongly urge that the clause in the charter of the taxpayer expressly authorizing it to provide "places for reading rooms, libraries and social and religious meetings" by implication prohibits it from providing dormitories. These words of the charter, however, are to be read in conjunction with its wider corporate purposes of ministering to the spiritual, mental, moral, social and physical

improvement of young men and promoting kindly intercourse between them. These expressions of corporate purposes are designed not to be mutually exclusive or to constitute limitations one upon the other, but to comprise all the different factors and classes mentioned. The maxim *expressio unius est exclusio alterius* is not here applicable. *Hiss* v. *Bartlett*, 3 Gray, 468, 472. *Gage* v. *Tirrell*, 9 Allen, 299, 305–307. The field of service thus declared to be the purpose of the taxpayer is as broad as the changing needs of young men may require. It comprehends whatever may be deemed essential to meet new conditions of life. It cannot, in our opinion, be held as matter of law to be outside the corporate purposes of the taxpayer to attempt to accomplish these aims through the combination of a dormitory possessing the opportunities of the taxpayer for fostering these attributes of good citizenship with the other facilities mentioned in the charter. As has been several times pointed out, charity and charitable corporations are not limited to almsgiving, but comprehend a wider field of activity for the improvement of mankind. *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 342, and cases cited. *Newton Center Woman's Club, Inc.* v. *Newton*, 258 Mass. 326. This conclusion is in harmony with decisions in other jurisdictions. *Yale University* v. *New Haven*, 71 Conn. 316, 333–334. *Philadelphia* v. *Women's Christian Association*, 125 Penn. St. 572, 581. *Commonwealth* v. *Lynchburg Young Men's Christian Association*, 115 Va. 745, 752–755. *Ottawa Young Men's Christian Association* v. *Ottawa*, 20 Ont. Law Rep. 567, 571–572. See *Corbin Young Men's Christian Association* v. *Commonwealth*, 181 Ky. 384; *Young Men's Christian Association* v. *Lancaster County*, 106 Neb. 105. There appears to us to be nothing in *Phillips Academy* v. *Andover*, 175 Mass. 118; *Phi Beta Epsilon Corp.* v. *Boston*, 182 Mass. 457; *Boston Lodge Order of Elks* v. *Boston*, 217 Mass. 176, and *Babcock* v. *Leopold Morse Home for Infirm Hebrews & Orphanage*, 225 Mass. 418, at variance with this view.

It is further strongly contended that the dormitory has not been used exclusively for "young men," the sole objects

of the charity of the taxpayer. Without doubt some occupants of the dormitory were not young men. There is no hard and fast rule by which to separate young men from the middle-aged or those no longer young. That description is not susceptible of precise definition according to the common and approved usage of the language. Nothing in *Nelson* v. *Cushing*, 2 Cush. 519, 533, is contrary to this view on the present record. No statutory definition is provided. It has been held that, provided there is adherence in the main to the declared purpose of the charity in the use of its property, incidental variations do not destroy the right to exemption. *Mt. Hermon Boys' School* v. *Gill*, 145 Mass. 139, 149. *Emerson* v. *Milton Academy*, 185 Mass. 414, 415. *Franklin Square House* v. *Boston*, 188 Mass. 409, 410. *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 341–344. The dominant purpose of the taxpayer in maintaining these rooms, as already mentioned in the findings of the board, might reasonably be thought to be directly aided by the occupancy of some of the rooms by mature men of firm character and elevating and strengthening influence among their juniors.

Clearly, from the facts found, no part of the income or profits from the dormitory was used or appropriated for any other than the charitable uses set forth in the charter of the taxpayer. Therefore G. L. (Ter. Ed.) c. 59, § 5, Third (a), does not apply.

There was no error of law in receiving testimony of directors of the taxpayer as to their dominant purpose as such officers in opening and maintaining the dormitory. There was no recital in the votes of the directors of the dominant purpose of the taxpayer in undertaking the project. Whatever may be the force of the presumption that its purpose was to keep within its lawful corporate ends, *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50; *Janevesian* v. *Esa*, 274 Mass. 231, 233, the testimony of the managing board, who possessed the power and upon whom rested the duty of forming and asserting the dominant purpose of the taxpayer on this subject, as to that purpose, was not inadmissible. *Thacher* v. *Phinney*, 7 Allen,

146, 149. *Sherman* v. *Sherman*, 193 Mass. 400. *Davis* v. *H. S. & M. W. Snyder, Inc.* 248 Mass. 387, 392. *Porter* v. *Spring*, 250 Mass. 83, 87, and cases cited. The finding as to the character and purpose of the maintenance of the dormitory must stand. There was no reversible error in admitting a letter sent by the taxpayer to the assessors at their request. It was at most cumulative and did not adversely affect the substantial rights. *Northern Industrial Chemical Co.* v. *Director General of Railroads*, 249 Mass. 246, 256.

It is not necessary to discuss further the errors set forth in the claim of appeal of the assessors. For the most part they relate to findings of fact which cannot be reversed because all the evidence is not before us. So far as matters of law are concerned, there is no reversible error for reasons which have been adequately stated.

There is no controversy as to the valuation or amount of abatement, if any is to be granted. The result is that abatement must be granted in the sum of $4,208.49, with costs before the board and the costs of the appeal.

*So ordered.*