BOSTON CHAMBER OF COMMERCE *vs.* ASSESSORS OF BOSTON.

Suffolk. May 13, 1943. — March 28, 1944.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Taxation,* Personal property tax: exemption. *Charity. Corporation,* Charitable corporation. *Chamber of Commerce. Words,* "Benevolent."

In determining as a matter of law whether a certain corporation had sustained the burden of proving that it was charitable within the provisions of G. L. (Ter. Ed.) c. 59, § 5, Third, a general finding by the Appellate Tax Board, stated to be from all the evidence, which was not reported, that the "dominant purpose of" the corporation was "to promote business and trade and to foster good business practices and relations," was subject to explanation, qualification and control by the board's reported findings of specific or subsidiary facts.

Discussion by QUA, J., of the characteristics which have been held to determine whether an institution is or is not charitable within the provisions of G. L. (Ter. Ed.) c. 59, § 5, Third.

Upon a general finding by the Appellate Tax Board that the dominant purpose of the Boston Chamber of Commerce, incorporated by St. 1909, c. 251, § 2, without shares of stock or division of profits among its members, was the promotion of good business and commerce and good business practices and relations in Boston and New England, and other findings describing sundry activities carried on by the Chamber in furtherance of that dominant purpose, some of which standing by themselves might be regarded as charitable and others of which would not be, and disclosing an element of special pecuniary benefit from such activities to some members of the Chamber different from that enjoyed by the public as a whole, the Chamber failed to show that it was a charitable corporation entitled to exemption from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third.

APPEAL from a decision of the Appellate Tax Board.

*J. J. Kaplan,* (*R. W. Meserve* with him,) for the taxpayer.

*R. H. Hopkins,* Corporation Counsel, (*W. A. McDermott,* Assistant Corporation Counsel, with him,) for the assessors.

QUA, J. The Boston Chamber of Commerce appeals from a decision of the Appellate Tax Board sustaining an assessment for the year 1941 upon its tangible personal property, consisting of office equipment and furniture. The issue is whether the property was exempt from taxation by

reason of the provisions of G. L. (Ter. Ed.) c. 59, § 5, Third, which so far as material exempts "Personal property of literary, benevolent, charitable and scientific institutions and of temperance societies incorporated in the commonwealth . . .," with the qualification that "If any of the income or profits of the business of the institution or corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes, its property shall not be exempt." The appellant contends that it is a benevolent and charitable corporation.

The evidence is not reported. The Appellate Tax Board made a general finding, stated to be from all the evidence, that "the dominant purpose of the appellant is to foster and promote good business and commerce in Boston and New England and that its activities have been primarily directed to that end." The board further found that the appellant's "dominant purpose is to promote business and trade and to foster good business practices and relations." The board ruled that "Worthy as this purpose may be," it did not bring the appellant within the class of charitable corporations contemplated by the statute, and that "It does not dispense 'charity' as that term has been defined by our courts." The general findings of the board are explained and qualified and may be controlled by findings of specific or subsidiary facts, which the board made in considerable detail. *Commissioner of Corporations & Taxation* v. *J. G. McCrory Co.* 280 Mass. 273, 278. *MacLeod* v. *Davis,* 290 Mass. 335, 337–338. It becomes necessary to examine the subsidiary findings in order to ascertain whether the appellant's activities really fall within the class of those which by precedent and reason have become regarded as benevolent and charitable.

The purposes for which the appellant was chartered are set forth in the act incorporating it, St. 1909, c. 251, § 2, in these words, "The objects of the new corporation shall be to promote the commerce, industry and public interests of Boston, and of New England; to promote and regulate a commercial exchange in the city of Boston; to acquire,

preserve and disseminate business information; to adjust controversies and misunderstandings; to establish and maintain uniformity in commercial usages; and to promote just and equitable principles of trade." The appellant has no shares of stock and divides no profit among its members. There are various classes of members, the more important of which are "resident members" and "sustaining members." Any person interested in the development of Boston and New England is eligible to be a member. Annual dues vary from $20 to $40 according to the age of the member. The by-laws provide that "firms, partnerships and corporations, being obviously more benefited by the various bureaus of the Chamber than individual members of the Chamber generally are, may become sustaining members of the Associated Bureaus of the Chamber by agreeing to pay annually" the dues fixed by the by-laws for whichever class of such sustaining membership the directors "may determine to be fair and equitable in the case of such firm, partnership or corporation, having in mind the capitalization of the firm, partnership or corporation, the volume of business done annually, the general value of the work done by the various bureaus to the firms, partnerships or corporations engaged in the particular line of industry or commerce in question, and such other factors as may seem to the Directors pertinent." The annual dues for "sustaining members" vary from "not less than $1,000" for class AA to $100 for class E.

The activities of the appellant are carried on by committees and bureaus. Some of these are the following: The bureau of commercial and industrial affairs collects and disseminates information relating to commerce and industry with the object of improving business conditions in the community. It endeavors to attract new industries to Boston and to increase the volume of general business. Its services are available to the public. The bureau of transportation studies land transportation, especially in respect to freight. It endeavors to secure fair rates and practices in order that Boston may compete favorably with other parts of the country. The civic bureau collects facts relating chiefly

to taxation and governmental expenditures and supplies information to governmental agencies regarding such matters. The bureau of investigation and information secures and makes available to business and professional men information of great variety concerning business and commerce. The convention bureau furnishes information and renders assistance to persons desiring to hold or attending conventions in Boston in order to make Boston attractive, interesting, and hospitable to attending visitors. This service is utilized mainly by nonmembers and is without charge. The Maritime Association, Inc., whose members are members or the representatives of members of the appellant, deals with rates, rules, and facilities for shipping by water.

The appellant publishes a monthly magazine of information about Boston and New England intended for the promotion of better commerce and better industrial living and working conditions. The by-laws provide for the formation of "subordinate association[s] of the Chamber" composed of members of the appellant for "promoting the special trade, industry, business, profession, or object in which they are interested." There are other associations of members, such as the executives' club, the sales managers' club, and the junior executives' club. These promote the main objects of the chamber but emphasize problems of special interest to these groups. The appellant occasionally holds luncheon and dinner meetings at which well known leaders speak on topics of general educational interest. These meetings are open to members and to the public up to the capacity of the hall. At these meetings prices for nonmembers are the same as for members. There are also various forums and conferences open to the public for the discussion of problems of public interest.

The appellant is supported by the dues of its members and by "contributions" of various corporations and firms which constitute the "sustaining fund." It is not clear whether these "contributions" are the same as the "dues" for "sustaining members" fixed as previously stated. In 1941 the "dues" amounted to $76,051.92 and "contribu-

tions" to the "sustaining fund" amounted to $40,528.85. There are about two thousand members. The secretary, who receives a salary of $11,000, is the only paid general officer of the appellant, but the appellant's total payroll is about $85,000 per annum, of which $50,000 is paid in salaries to "the executive officers of the various bureaus and committees."

Normally all property of a taxable nature should contribute its proportionate share to the support of the State. Exemption from taxation is a matter of special favor or grace. It will be recognized only where the property falls clearly and unmistakably within the express words of a legislative command. *Redemptorist Fathers* v. *Boston*, 129 Mass. 178, 180. *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 257. *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330, 332. *Boston* v. *Quincy Market Cold Storage & Warehouse Co.* 312 Mass. 638, 654. And the burden of proving an exemption is upon the taxpayer who claims it. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 384. The word "benevolent" in the statute, employed in conjunction with the word "charitable," is synonymous with that word and adds nothing to it. *Molly Varnum Chapter, D. A. R.* v. *Lowell*, 204 Mass. 487, 492. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 385.

The history and nature of charities in the law was examined at length in the leading case of *Jackson* v. *Phillips*, 14 Allen, 539. In that case the then Mr. Justice Gray said, "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government" (page 556). Plainly under this definition the Boston Chamber of Commerce is not a charity. It distributes no alms or relief. It has no religious aspect. Any educational work

it may do is incidental and subordinate. It does not erect or maintain public buildings or works. And it does nothing that in any just sense can be said to exercise any appreciable influence in lessening any burden government would be under any obligation to assume — an accomplishment which is frequently put forward as the fundamental reason for exempting charities from taxation. Yet the activities enumerated in the foregoing definition taken from *Jackson* v. *Phillips* — relief, religion, education, and public works — are still, in one form or another, the characteristics which distinguish most charities.

But not all. It has come to be recognized that new objects must be added in order to comprehend within the class of charities a wide variety of gifts which represent a wholly generous and unselfish devotion of wealth to uses which benefit the public generally or whole classes of the public and from which the donor derives no personal advantage. *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 342. *Springfield Young Men's Christian Association* v. *Assessors of Springfield*, 284 Mass. 1, 7. *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 255. So a fund to pay premiums for important discoveries in heat or light (*American Academy of Arts & Sciences* v. *Harvard College*, 12 Gray, 582), a gift for the promotion of agricultural or horticultural improvements (*Rotch* v. *Emerson*, 105 Mass. 431), a society for the prevention of cruelty to animals (*Massachusetts Society for the Prevention of Cruelty to Animals* v. *Boston*, 142 Mass. 24), a corporation to provide at moderate cost a home for working girls who are not paupers (*Franklin Square House* v. *Boston*, 188 Mass. 409), a chapter of the Daughters of the American Revolution which, in addition to educational and relief work, promoted historical research, aided in preserving historical sites and inculcated patriotism (*Molly Varnum Chapter, D. A. R.* v. *Lowell*, 204 Mass. 487), a nonprofit sanitarium which admitted chiefly patients able to pay (*New England Sanitarium* v. *Stoneham*, 205 Mass. 335), a wood yard in connection with a home for discharged prisoners (*Conklin* v. *John Howard Industrial Home*, 224 Mass. 222),

and a trust to promote the best interests of sewing girls in Boston (*Bowditch* v. *Attorney General,* 241 Mass. 168, 175) were all held to be charities; while, on the other hand, a corporation for the dissemination of theosophical ideas was held not to be charitable (*New England Theosophical Corp.* v. *Assessors of Boston,* 172 Mass. 60), and the Boston Symphony Orchestra was held to operate in such a manner with relation to the sale of tickets and other matters that its standing as a charity was doubtful, and it could not obtain exemption. *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248. See *Newton Centre Woman's Club, Inc.* v. *Newton,* 258 Mass. 326.

Notwithstanding the law's acknowledgment of the manifold new forms in which charity may find expression, the more remote the objects and methods become from the traditionally recognized objects and methods the more care must be taken to preserve sound principles and to avoid unwarranted exemptions from the burdens of government. This statement becomes especially pertinent where the alleged charity operates in the fields of trade and commerce. It may be that the promotion of trade and commerce in an abstract sense, with the sole purpose of benefiting the public by a larger and more efficient exchange of goods entirely divorced from any attempt on the part of the promoters to augment their own businesses to their own profit, might be so carried on as to become a charity. A foundation for industrial research for the sole purpose of discovering and making generally available more efficient methods of production and distribution might be a charity. But of the multitude of trade organizations and associations existing today in all branches of industry and commerce it is believed that few could pass the test.

In our opinion the Boston Chamber of Commerce is not an exception. Although no doubt its work is highly commendable and of great public benefit, and although some of its activities, if they stood alone, might perhaps be regarded as charitable in the legal sense, others which may be of equal importance in the total effort cannot be so regarded. The endeavor to attract new industries to Boston,

desirable as it is from a Bostonian viewpoint, is not shown to be a charity under any definition of that word. The endeavor to place Boston in a favorable competitive position with respect to transportation rates and practices, even though such rates and practices are to be "fair," has little of the charitable aspect. The promotion of "the special trade, industry, business, profession, or object in which . . . [certain of the members] are interested" is not shown to be a charitable purpose. Yet all these objects can fairly be included within the board's general finding that the "dominant purpose" of the appellant is "to promote business and trade and to foster good business practices and relations."

Moreover, the element of a special pecuniary advantage and profit to members of the appellant which is different from that enjoyed by the public as a whole is not absent. Its very by-laws recognize this fact, requiring higher dues from the so called sustaining members because they are "more benefited" than other members, and providing for a sliding scale of dues among the sustaining members dependent, at least in large part, upon "the general value of the work done by the various bureaus to the firms, partnerships or corporations engaged in the particular line of industry or commerce in question." The so called "subordinate association[s] of the Chamber" are plainly designed to promote "the special trade, industry, business, profession or object" in which their members are interested. It cannot be supposed that this is done wholly in the larger interest of the public and not at all for the special business advantage of the members. The general finding of the board that "the dominant purpose of the appellant is to foster and promote good business and commerce in Boston and New England" is not necessarily inconsistent with a motive of private profit. Many a frankly commercial venture might entertain a similar purpose which might in a sense dominate its activities, even though the vision of profit be not absent. In this case the subsidiary findings, taken in connection with the general findings, seem to us to show that profit is present in the enterprise. At

least it cannot be said that they show beyond a doubt that it is not present, and as already shown doubt is fatal to exemption.

The appellant here fails for reasons in some respects similar to those which have led to decisions that associations of various kinds organized for mutual benefit are not charities, although public policy may foster them. *Newcomb v. Boston Protective Department*, 151 Mass. 215. *Young Men's Protestant Temperance & Benevolent Society* v. *Fall River*, 160 Mass. 409. Compare *Parkhurst* v. *Treasurer & Receiver General*, 228 Mass. 196, 199; *Assessors of Boston v. Garland School of Home Making*, 296 Mass. 378, 387–388. See *Assessors of Boston v. Boston Pilots' Relief Society*, 311 Mass. 232; *Hairenik Association, Inc. v. Boston*, 313 Mass. 274.

We conclude that the appellant has failed to show that it is a charitable institution whose property is exempt from taxation. This decision is in accord with that reached in the only other case which has come to our attention where the question of the exemption of a chamber of commerce from taxation has been squarely passed upon. *Memphis Chamber of Commerce* v. *Memphis*, 144 Tenn. 291. See also *People's National Bank* v. *Greenville County*, 174 S. C. 256. In *Corporation of the Chamber of Commerce of the State of New York* v. *Bennett*, 143 Misc. (N. Y.) 513, it was said that the plaintiff was "a charitable, or at least a benevolent corporation" (page 515), but the case related to trust funds which had been designated by the donors for distinctly charitable purposes, and the court disclaims making any decision as to whether the chamber of commerce would be a charity for the purpose of tax exemption. Chambers of commerce and similar organizations are expressly exempted from Federal income taxes by § 101 (7) of the Internal Revenue Code, (U. S. C. [1940 ed.] Title 26, § 101 [7]).

*Petition for abatement dismissed.*