Hart, J.
Tax exemption of real property is permitted but limited by the Constitution of Ohio in Section 2, Article XII thereof, the pertinent part of which is as follows:
“* * * general laws may be passed to exempt burying grounds, public school houses, houses used exclu *195 sively for public worship, institutions used exclusively for charitable purposes, and public property used exclusively for any public purpose * * *.”
Pursuant to this constitutional provision, the General Assembly provided in Section 5353, General Code, for the exemption of certain property from taxation, the pertinent part of which section is as follows:
“ * * * Real and tangible personal property belonging to institutions used.exclusively for charitable purposes, shall be exempt from taxation. ’ ’
In these cases it has been stipulated by the complainant that appellants are charitable organizations, and the question of the exemption from taxation of their respective properties is narrowed to the use of the properties. In this connection the complainant claims that the properties are not “used exclusively for charitable purposes,” and that as a consequence they are wholly subject to taxation.
It must be conceded that the criterion of the exemptibility of these properties is their use for charitable purposes. The application • of this limitation on the exemption of real property from taxes was before this court in the case of Wilson, Aud., v. Licking Aerie No. 387, F. O. E., 104 Ohio St., 137, 135 N. E., 545, wherein it was held that to be exempt the property need not be owned by an institution of purely public charity, so long as the property itself is exclusively devoted to and used for charitable purposes.
The complainant herein, therefore, insists that, even though the properties are owned and operated by charitable institutions, the facts are that large sections of the properties are used for dormitories, for operation of public cafeterias, and in some instances for the operation of public bowling alleys and that, therefore, the properties cannot be considered as being exclusively used for charitable purposes.
*196 This court has held on numerous occasions that the use of lands for private homes for individuals and the use of land for low-rent housing for persons of limited income do not entitle the owner of the property to exemption from the payment of real estate taxes. Incorporated Trustees of Gospel Worker Society v. Evatt, Tax Commr., 140 Ohio St., 185, 42 N. E. (2d), 900; Columbus Metropolitan Housing Authority v. Thatcher, Aud., 140 Ohio St., 38, 42 N. E. (2d), 437; Dayton Metropolitan Housing Authority v. Evatt, Tax Commr., 143 Ohio St., 10, 53 N. E. (2d), 896, 152 A. L. R., 223; Youngstown Metropolitan Housing Authority v. Evatt, Tax Commr., 143 Ohio St., 268, 55 N. E. (2d), 122; Mussio v. Glander, Tax Commr., 149 Ohio St., 423, 79 N. E. (2d), 233; Cleveland Branch of Guild of St. Barnabas for Nurses v. Board of Tax Appeals, 150 Ohio St., 484, 83 N. E. (2d), 229; Beerman Foundation, Inc., v. Board of Tax Appeals, 152 Ohio St., 179, 87 N. E. (2d), 474; Western Reserve Academy v. Board of Tax Appeals, 153 Ohio St., 133, 91 N. E. (2d), 497; In re Application for Exemption from Taxation, 155 Ohio St., 590, 99 N. E. (2d), 761.
This court has also held that where income from rentals of real estate for private housing or from a commercial business is devoted to objects of charity or used in connection with charity the property so rented is nevertheless not exempt from taxation. See Incorporated Trustees of Gospel Worker Society v. Evatt, Tax Commr., supra (special business, income from which devoted to charity, and housing for employees of business); Society of the Precious Blood v. Board of Tax Appeals, 149 Ohio St., 62, 77 N. E. (2d), 459; Mussio v. Glander, Tax Commr., supra (private homes of priests, student priests and social workers, no school or social work open to public); Cleveland Branch of Guild of St. Barnabas for Nurses *197 v. Board of Tax Appeals, supra (low rent accommodations for nurses); Beerman Foundation, Inc., v. Board of Tax Appeals, supra (homes for disabled veterans at low rental); Western Reserve Academy v. Board of Tax Appeals, supra; and President and Trustees of Miami University v. Evatt, Tax Commr., 144 Ohio St., 434, 59 N. E. (2d), 366 (private homes of professors of a school).
The question here is whether the properties in the instant cases fall within the categories of the properties under consideration in the foregoing cited cases, or, as substantially stated by appellants, whether real estate owned and operated by a charitable institution, organized not’for profit, is used exclusively for a charitable purpose, where the property is wholly devoted to an overall program of social, religious and educational service to the community by providing a place in which to live (a) under wholesome influences and surroundings designed to develop Christian character, with facilities for recreation and for mental, moral and physical improvement, (b) for young working people, students, the physically handicapped and persons under other disabilities, some of low or moderate means but others entirely destitute, who have no homes of their own, (c) without cost to those unable to pay and at prices based upon ability to pay in the case of diose having the means to do so, all such payments being used to help defray the cost of conducting the institution, and (d) open to all without regard to race, color or creed.
In addition to the statement of facts hereinbefore made as to the use of the properties, the basic facts are further stated by counsel for appellants in their brief as follows:
“Each institution devotes itself, exclusively, to conducting an integrated welfare program for the moral, *198 intellectual, physical and social improvement oí a broad segment of the general public of Cincinnati, Ohio. The Young Women’s Christian Association, for example, devotes itself primarily to ‘the temporal, moral and religious welfare of women, especially young women who are dependent on their own exertions for support,’ while the principal concern of The Friars Club is with the welfare of men and boys, particularly young men. Within broad limits such as these, the services of the institutions are available to all.
“Each organization has ‘members’ who take part in its program, but membership is open at nominal or no cost to all of those whom the program is designed to serve. No one is excluded because of race, color or creed, or because of inability to pay dues or to make any other payments.
“The work of the institutions is carried on without any view to profits (there are none) and is financed by gifts of persons interested in the advancement of their respective purposes, contributions of the local community fund in the case of the Young Women’s Christian Association [The Young Men’s Christian Association] and the Fenwick Club and of the religious orders conducting the institutions in the case of the Friars Club and the Fontbonne, and by the dues and other voluntary payments of members and other participants in the institutional programs. Much of the work, of course, is done without cost to the beneficiaries and where charges are made they are based upon ability to pay. No one has ever been refused a service because he was unable to pay for it.
“A fully equipped building or buildings has been dedicated by each institution to the accomplishment of its purposes. Each occupies its own property and uses it exclusively for the conduct of its program.”
The Board of Tax Appeals in its decisions recog *199 nized the charitable character of the activities carried on in the greater areas -of these properties bnt held that the lesser areas, used as dormitories and cafeterias, and in one case a bowling alley, were used for noncharitable purposes. The board apparently did not give consideration to the character of these uses as connected with and incidental to the overall programs carried on within the properties and the charitable nature of each institution as a whole. These overall programs carried on by these institutions devoted to charity without any commercial aspect or commercial profit, in the opinion of the court, differentiate the instant cases, as to the specific facts, from the cases hereinbefore cited. See College Preparatory School for Girls v. Evatt, Tax Commr., 144 Ohio St., 408, 413, 59 N. E. (2d), 142; Aultman Hospital Assn. v. Evatt, Tax Commr., 140 Ohio St., 114, 42 N. E. (2d), 646; O’Brien, Treas., v. Physicians Hospital Assn., 96 Ohio St., 1, 8, 9, 116 N. E., 975, L. R. A. 1917F, 741.
A somewhat similar question was before this court in the case of Waddell, a Minor, v. Young Women’s Christian Assn., 133 Ohio St., 601, 15 N. E. (2d), 140, which involved the liability of the Dayton Young-Women’s Christian Association for the alleged negligence of its swimming- instructor. Liability turned upon the question whether the association was a public charitable institution. The court held that it was such an institution even though it charged fees for services and provided rooms for young women at reasonable cost.
Judge Gorman in the opinion in that case said:
“In order to determine whether the Young Women’s Christian Association is a charitable institution we may look to the charter, constitution, bylaws and such oral evidence as is not inconsistent therewith. * * *
( C ^ ^
*200 “In the amended articles of incorporation in effect at the time of the injury to the plaintiff, it is set forth: ‘The purposes for which said corporation is formed, shall he to promote the spiritual, moral, mental, social and physical welfare of the women and girls of the city * * V
“The evidence offered showed that in actual practice the association attempted to achieve these purposes. No evidence was offered to controvert the purposes of the association and the uses to which its property was put. While fees are charged for services, the institution is sustained largely by private donations and gifts from community funds.
“Charity is not aid to the needy alone, but it embraces and includes all which aids man and seeks to improve his condition. * * *
“Efforts are being expended in attempting to train the youth of today to meet the problems of tomorrow. * * * The purpose, therefore, is of an unquestioned public character.
“The jury was not called upon, in the special verdict submitted, to determine whether the defendant association was a charitable institution. On the undisputed evidence, the court could reach no other conclusion than that the Young Women’s Christian Association was a public charitable institution.
“This conclusion is in accord with the great weight of authority where courts have been called upon to determine the nature of institutions with similar purposes and activities.”
In the case of Salvation Army v. Hoehn, 354 Mo., 107, 188 S. W. (2d), 826, the court held that a building-used by the Salvation Army to provide room and board for girls and women of low-earning capacity was “used exclusively for charitable purposes,” notwith *201 standing the institution made moderate charges for the services. More recently, the same court in Young Men’s Christian Assn. of St. Louis v. Sestric (Mo.), 242 S. W. (2d), 497, held that the building of the St. Louis Young Men’s Christian Association was exempt from taxation as being used exclusively for charitable purposes, notwithstanding the fact that the association received payment for the use of its dormitories, cafeterias, barber shop, candy and tobacco counter, cleaning and pressing shop, and athletic facilities.
The Constitution of Illinois provides that “the property of the state and the counties both real and personal and such other property as the General Assembly may deem necessary for school, religious and charitable purposes may be exempt from taxation.” The General Assembly granted the Young Men’s Christian Association of Chicago a charter exempting its property from taxation for the above purposes. In the case of People v. Chicago Young Men’s Christian Assn. of Chicago, 365 Ill., 118, 6 N. E. (2d), 166, the court held that the property of the institution was. tax-exempt including its dormitories, restaurants, cafeterias, laundry and haberdashery because the latter were incidental to its general program. The court held further that in determining whether an institution is exempt from taxation, the test is whether the primary purpose of the institution is charitable or making a profit and devoting those profits to charitable purposes. See, also, Salvation Army v. Allegheny County, 367 Pa., 373, 80 A. (2d), 758; Asbury Park v. Salvation Army, 26 N. J. Misc., 170, 58 A. (2d), 216; Young Men’s Christian Assn. v. Los Angeles, 35 Cal. (2d), 760, 221 P. (2d), 47; Fredericka Home v. San Diego, 35 Cal. (2d), 789, 221 P. (2d), 68; Springfield Young Men’s Christian Assn. v. Assessors, 284 Mass., *202 1, 187 N. E., 104; Young Women’s Christian Assn. v. Pelham, 9 N. J. Misc., 196, 153 A., 397; People, ex rel. Young Men’s Christian Assn. of New York City, v. Miller, 278 N. Y., 651, 16 N. E. (2d), 302.
Persuasive also in this respect is the fact that the properties of the numerous private colleges of Ohio, open to the public without racial or religious distinction, are exempted from taxation under Section 5353, General Code, as property of charitable institutions, devoted exclusively to charitable purposes notwithstanding the fact that most, if not all, of such colleges operate dormitories and dining rooms as incidental to their main purpose of educational and religious training. See College Preparatory School for Girls v. Evatt, Tax Commr., supra; Library Assn. v. Pelton, 36 Ohio St., 253; Cleveland Bible College v. Board of Tax Appeals, 151 Ohio St., 258, 85 N. E. (2d), 284; Rabbinical College of Telshe, Inc., v. Board of Tax Appeals, 156 Ohio St., 376, 102 N. E. (2d), 589.
The decisions of the Board of Tax Appeals are modified and the causes are remanded to that board with direction to so modify its entries as to order the whole of the properties in these cases exempt from taxation on the ground that they are at present used exclusively for charitable purposes.

Decisions modified,.

Stewart, Middleton and Taft, JJ., concur.