New Habitat, Inc. *vs.* Tax Collector of Cambridge
(and two companion cases[1]).

Middlesex. May 6, 2008. - July 3, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Taxation,* Real estate tax: charity, Real estate tax: exemption. *Charity.*

A Superior Court judge erred in concluding that real estate owned by a nonprofit organization was not entitled to a tax exemption under G. L. c. 59, § 5, Third, as property of a "charitable . . . institution," where the organization's dominant purposes and methods (providing long-term care and housing for persons with acquired brain injury) were traditionally charitable ones; where the fees charged by the organization, although substantial, were not shown to be unreasonable for the services provided and were expended solely for the successful operation of the organization; and where the number of the organization's beneficiaries, although small, fell within the number recommended by the State for housing for brain-injured individuals. [731-736]

This court declined to adopt, for purposes of determining whether an organization qualifies for the tax exemption provided by G. L. c. 59, § 5, Third, for property of a "charitable . . . institution," a test whereby the charitable status of an organization depends on the wealth of its beneficiaries and the existence of sufficient alternative organizations that can perform the functions of the organization in question. [736-738]

In an action to recover taxes paid on real property, the judge erred to the extent that she concluded that the plaintiff organization's tax-exempt status under Federal law was grounds to deny it tax-exempt status under G. L. c. 59, § 5, Third. [738-739]

Civil actions commenced in the Superior Court Department on July 23, 2004; July 26, 2005; and June 29, 2006.

After consolidation, the case was heard by *Sandra L. Hamlin,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Christine Vargas Colmey* for the plaintiff.

---

[1] Three actions involving the same parties were consolidated in the Superior Court.

*Elizabeth A. Lashway* for the defendant.

*Anthony M. Ambriano,* for Board of Assessors of Boston & others, amici curiae, submitted a brief.

SPINA, J. The plaintiff, New Habitat, Inc. (New Habitat), seeks to recover the taxes that it has paid on its real property. It claims that this property is exempt from taxes under G. L. c. 59, § 5, Third, as property of a "literary, benevolent, charitable or scientific institution." A judge in the Superior Court concluded that New Habitat was not entitled to a tax exemption under that statute and dismissed on summary judgment New Habitat's claims for recovery of taxes paid. New Habitat appealed. We granted its application for direct appellate review. We now vacate the order granting summary judgment in favor of the tax collector and order entry of summary judgment in favor of New Habitat.[2]

*Background.* New Habitat is a nonprofit organization whose stated mission is to provide long-term housing for persons with acquired brain injury and to promote the well-being of its residents by providing them with, among other things, educational programs, personal assistance programs, and programs to improve their physical and psychological health. New Habitat's staff provides its residents with care and support on its property at 225 Brattle Street in Cambridge, the property for which New Habitat paid the taxes that it now seeks to recover. At maximum capacity, this property can accommodate four residents. Since New Habitat began providing residential services, there have been three applicants for admission. New Habitat accepted them all. Currently, only two residents remain.[3]

To be qualified as a resident at New Habitat, an applicant must have an acquired brain injury, have a physical examination to determine whether he is in an acceptable state of health, maintain his own health insurance, and provide information on his financial ability to pay New Habitat's fees and expenses. Monthly fees currently range from about $17,000 to $18,000 per month. Until

---

[2]We acknowledge the amicus brief submitted by the board of assessors of Boston, the board of assessors of Brookline, the board of assessors of Cambridge, the board of assessors of Newton, and the Massachusetts Association of Assessing Officers.

[3]New Habitat submitted uncontroverted evidence that the Massachusetts Statewide head injury program recommends that a residence for brain injury survivors have between two and six residents.

recently, residents were required to pay a $150,000 entrance fee, an amount that was refundable without interest at the termination of the contract or on the resident's death. All fees and revenue derived from the property are expended solely for the successful operation of the residence.

New Habitat received demands for payment of property taxes for the fiscal years 2004, 2005, and 2006 from the tax collector of Cambridge. New Habitat made timely payments of these taxes and timely commenced proceedings in the Superior Court to recover its real estate tax payments.[4] The parties filed cross motions for summary judgment, and the judge granted the tax collector's motion. New Habitat appealed.

*Discussion.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). The taxpayer has the burden of establishing entitlement to a charitable exemption under G. L. c. 59, § 5, Third. *Western Mass. Lifecare Corp.* v. *Assessors of Springfield*, 434 Mass. 96, 101 (2001). "Exemption from taxation is to be strictly construed and must be made to appear clearly before it can be allowed." *Springfield Young Men's Christian Ass'n* v. *Assessors of Springfield*, 284 Mass. 1, 5 (1933).

New Habitat contends that it is a charitable organization within the scope of G. L. c. 59, § 5, Third, and that it therefore is entitled to a charitable exemption from its real estate taxes. The tax collector, on the other hand, contends that New Habitat's substantial fees so limit its class of potential beneficiaries that New Habitat does not qualify for a charitable exemption under G. L. c. 59, § 5, Third.

General Laws c. 59, § 5, Third, provides that real estate owned by a "charitable organization and occupied by it or its

---

[4]New Habitat timely sought to recover its taxes pursuant to G. L. c. 60, § 98. See *New England Legal Found.* v. *Boston*, 423 Mass. 602, 607 (1996). An alternative remedy was available through the Appellate Tax Board under G. L. c. 59, § 65. See *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. 536, 536 & n.1 (1981).

officers for the purposes for which it is organized" is exempt from taxation. A charitable organization is "a literary, benevolent, charitable or scientific institution or temperance society incorporated in the commonwealth." *Id.* "[T]he dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose." *Massachusetts Med. Soc'y* v. *Assessors of Boston*, 340 Mass. 327, 332 (1960). For purposes of the local property tax exemption, the term "charity" includes more than almsgiving and assistance to the needy. *New England Legal Found.* v. *Boston*, 423 Mass. 602, 609 (1996). "A charity, in the legal sense, may be more fully defined as a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 254-255 (1936), quoting *Jackson* v. *Phillips*, 14 Allen 539, 556 (1867). These activities characterize the traditional objects and methods of charity but do not encompass all the areas now considered to be charitable for the purposes of the real estate tax exemption. *Boston Chamber of Commerce* v. *Assessors of Boston*, 315 Mass. 712, 717 (1944).

To determine whether an organization is charitable, the court weighs a number of nondeterminative factors. These factors include, but are not limited to, whether the organization provides low-cost or free services to those unable to pay, see *New England Legal Found.* v. *Boston, supra* at 610; whether it charges fees for its services and how much those fees are, see *Assessors of Boston* v. *Garland Sch. of Home Making*, 296 Mass. 378, 390 (1937); whether it offers its services to a large or "fluid" group of beneficiaries and how large and fluid that group is, see *New England Legal Found.* v. *Boston, supra* at 612; *Cummington Sch. of the Arts, Inc.* v. *Assessors of Cummington*, 373 Mass. 597, 601 (1977); whether the organization provides its services to those from all segments of society and from all walks of life, see *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. 536, 544 (1981); and whether the

organization limits its services to those who fulfil certain qualifications and how those limitations help advance the organization's charitable purposes, see *Western Mass. Lifecare Corp.* v. *Assessors of Springfield, supra* at 103-104; *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston, supra* at 256.

The significance of these factors depends in no small part on the dominant purposes and methods of the organization. The closer an organization's dominant purposes and methods are to traditionally charitable purposes and methods, the less significant these factors will be in our determination of the organization's charitable status under G. L. c. 59, § 5, Third. See *Boston Chamber of Commerce* v. *Assessors of Boston, supra* at 718. The farther an organization's dominant purposes and methods are from traditionally charitable purposes and methods, the more significant these factors will be. See *id.* ("the more remote the objects and methods become from the traditionally recognized objects and methods the more care must be taken to preserve sound principles and to avoid unwarranted exemptions from the burdens of government"); *Institute of Gas Tech.* v. *Department of Revenue*, 289 Ill. App. 3d 779, 787-788 (1997) (court considers "the remoteness of the nature of [organization's projects] from traditional notions of charities" in determining organization's tax exempt status).

Consistent with these principles, we consider the charging of fees to be more significant the farther the organization's dominant purposes and methods are from traditionally charitable ones. See *Western Mass. Lifecare Corp.* v. *Assessors of Springfield, supra* at 104-106 (organization was not charitable where it charged fees and did not have traditionally charitable purposes and methods); *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston, supra* at 256 (same). On the other hand, we consider the charging of fees to be less significant the closer the organization's dominant purposes and methods are to traditionally charitable ones. See *Assessors of Boston* v. *Garland Sch. of Home Making, supra* at 389, 390 (organization was charitable where it charged fees and had traditionally charitable purposes and methods); *Carpenter* v. *Young Men's Christian Ass'n*, 324 Mass. 365, 368, 369 (1949) (same). See also *Butterworth* v. *Keeler*, 114 N.Y. 446, 449 (1916) ("What controls is not the receipt of income, but its purpose"). But see *Under the Rainbow Child Care Ctr., Inc.* v.

*County of Goodhue*, 741 N.W.2d 880, 887 (Minn. 2007). In weighing this factor, we consider whether the organization's charging of fees helps to advance the organization's charitable purpose. See *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston, supra* at 255-256. See also *Butterworth* v. *Keeler, supra.*

In the present case, New Habitat has purposes and methods close to traditionally charitable ones.[5] New Habitat tends to the injured. It seeks to relieve them of the hardships and constraints that afflict those with acquired brain injury. More specifically, New Habitat provides long-term housing for persons with acquired brain injury and provides its residents with personal assistance programs, educational programs, and programs to improve their physical and psychological health. There is also undisputed evidence that New Habitat's residents cannot live independently or care for themselves and that they need twenty-four-hour support each day. In light of these facts, we conclude that New Habitat's dominant purposes and methods are traditionally charitable. See *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston, supra* at 254-255 (providing relief from suffering and constraint are charitable purposes). See also *McDonald* v. *Massachusetts Gen. Hosp.*, 120 Mass. 432, 435 (1876) ("administering to the comfort of the sick" helped to establish organization as public charity); *H-C Health Servs., Inc.* v. *Assessors of S. Hadley*, 42 Mass. App. Ct. 596, 599 (1997) (providing residence and care to elderly and infirm helped to establish organization as charitable).

Because New Habitat's dominant purposes and methods are traditionally charitable, the fact that the organization charges fees for its services plays a less significant role in our determination of its charitable status. In *Assessors of Boston* v. *Garland Sch. of Home Making*, 296 Mass. 378, 389, 390 (1937), where an organization's purposes and methods were traditionally charit-

---

[5]New Habitat is incorporated in the Commonwealth as a not-for-profit corporation and has been granted tax-exempt status under § 501(c)(3) of the Internal Revenue Code; its officers and members of its board of directors receive no remuneration for their work; and the organization has no stockholders and pays no dividends. See G. L. c. 59, § 5, Third (*a*) (charitable organization cannot divide income or profits among stockholders); *New England Legal Found.* v. *Boston*, 423 Mass. 602, 610 & n.8 (1996) (organization's charter and treatment under Federal and State tax schemes is nondeterminative indicator of charitable purpose).

able, we explicitly held that the organization may charge substantial, reasonable fees for its services. That is, the charging of those fees did not limit the organization's beneficiaries so as to render it uncharitable, especially where that organization had traditionally charitable purposes and methods. *Id.*

The same reasoning applies in the present case. New Habitat charges substantial fees for its services, but the tax collector does not contend that those fees are unreasonable for the services provided, and the parties agree that all fees and revenue derived from the property are expended solely for the successful operation of the residence. The fees thus help to advance the organization's charitable purpose. Furthermore, even though the charging of a fee is a factor we consider in our assessment of an organization's charitable status, we do not here weigh these fees as heavily as we otherwise might because New Habitat's dominant purposes and methods are traditionally charitable. Consequently, in line with the *Garland Sch.* decision, we hold that the charging of these fees does not render New Habitat not charitable under G. L. c. 59, § 5, Third. The judge erred where she found otherwise.[6]

Previous cases contain language suggesting that the charging of a substantial fee, in itself, might render an organization not charitable under G. L. c. 59, § 5, Third. To the extent that those cases can be read to support such a proposition, we decline to follow them. It should be noted, however, that the results in those cases are fully in line with the result reached here and with the principles articulated in this decision.

For example, in *Western Mass. Lifecare Corp.* v. *Assessors of Springfield*, *supra* at 104-105, we held that an organization was not charitable for purposes of G. L. c. 59, § 5, Third, where it

---

[6]The judge also found that New Habitat is not a charitable organization in part because of its "selection criteria." She is not entirely clear how these criteria undermine New Habitat's charitable status. Presumably, she finds fault with the fact that New Habitat requires applicants to provide financial information so that New Habitat can determine the applicant's ability to pay New Habitat's substantial fees. It would be an odd result, however, if New Habitat could charge fees without losing its charitable status but could not have some mechanism to determine beforehand whether its applicants could afford those fees. Requiring such financial information from its applicants enables New Habitat to run its organization more efficiently and to advance its charitable purposes more effectively. Consequently, New Habitat could request financial information from its applicants without jeopardizing its claim for charitable status.

charged a large fee for its services. However, that organization's dominant purposes and methods were not particularly close to the purposes and methods traditionally considered charitable. That is, it provided "luxury" residences for its residents, the vast majority of whom were well-off and relatively healthy. *Id.* at 105-106.

Similarly, in *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston, supra* at 256, the court held that an organization was not charitable for purposes of the real estate tax exemption where the organization charged a fee for its concerts. However, the court expressed doubt whether the dominant purpose of the organization was traditionally charitable and reasoned that its concerts may have been geared more to entertain than to educate. *Id.*

In those two cases, where it was doubtful that the organizations' dominant purposes and methods were traditionally charitable, a court properly would weigh the organization's fees more heavily than it would in the present case. As a result, the judge in the Superior Court did not properly deny New Habitat charitable status on account of its fees, but could properly deny those other organizations charitable status partly on account of their fees. The results in those cases are entirely consistent with the principles set forth in this decision.

The tax collector argues that New Habitat's small number of beneficiaries also weighs against our granting the organization charitable status. The number of an organization's beneficiaries is another one of the nondeterminative factors that we weigh in determining the charitable status of an organization. *New England Legal Found.* v. *Boston,* 423 Mass. 602, 612 (1996). We consider the number of an organization's beneficiaries in a manner similar to the way in which we consider its charging of fees. See *Boston Chamber of Commerce* v. *Assessors of Boston,* 315 Mass. 712, 718 (1944). That is, we consider the number of an organization's beneficiaries to be more significant the farther the organization's dominant purposes and methods are from traditionally charitable purposes and methods. See *id.* at 716, 719 (organization not charitable where it had large number of beneficiaries but did not have traditionally charitable purposes and methods). On the other hand, we consider the number of its beneficiaries to be less significant the closer its dominant purposes and methods are to

traditionally charitable. See *Assessors of Dover* v. *Dominican Fathers Province of St. Joseph*, 334 Mass. 530, 539 (1956) (organization charitable where it had small number of beneficiaries but had traditionally charitable purposes and methods). In weighing this factor, we consider whether the number of an organization's beneficiaries helps to advance the organization's charitable purpose. See *New England Legal Found.* v. *Boston, supra* ("at any given moment an organization may serve only a relatively small number of persons" but nevertheless remain charitable organization).[7]

In the present case, New Habitat has purposes and methods close to traditionally charitable ones. Therefore, the fact that it has a relatively small number of beneficiaries plays a less significant role in our determination of its charitable status. Furthermore, New Habitat presented evidence suggesting that its limited numbers helped to advance its charitable purposes. That is, it presented undisputed evidence that the Statewide head injury program recommended that residences for brain-injured individuals should house between two and six individuals. The number of New Habitat's beneficiaries falls within this recommended number. Given these facts, we conclude that its limited numbers did not render New Habitat not charitable under G. L. c. 59, § 5, Third.

The tax collector argues, in addition, that New Habitat does not relieve a governmental burden and that New Habitat therefore does not qualify for a charitable exemption under G. L. c. 59, § 5, Third. More specifically, the tax collector contends that New Habitat is not entitled to charitable status, because its residents could afford an alternative living situation before they became dependent on the State for residence and care.

The fact that the persons benefited by an organization happen to be wealthy, even wealthy enough to seek alternatives before relying on State aid, does not necessarily affect the charitable nature of that institution. See *Western Mass. Lifecare Corp.* v.

---

[7]A large or fluid number of beneficiaries will often, although not always, help advance an organization's charitable purpose. See *New England Legal Found.* v. *Boston, supra* at 612. But see *Assessors of Dover* v. *Dominican Fathers Province of St. Joseph*, 334 Mass. 530, 539 (1956) (charitable organization had small number of beneficiaries).

*Assessors of Springfield, supra* at 104 ("An organization does not necessarily have to serve the poor or the needy in order to qualify for the charitable exemption"). For example, a school will not fail to qualify for charitable status merely because its students can afford to attend another private school before they become dependent on the State for education. See *Assessors of Boston* v. *Garland Sch. of Home Making,* 296 Mass. 378, 389, 390 (1937) (school charging substantial tuition fees held to be charitable). Similarly, New Habitat will not fail to qualify for charitable status merely because its residents have the means to live elsewhere before they become dependent on the State for care.

In essence, the tax collector urges us to adopt a test for charitable status whereby the charitable status of an organization depends on the wealth of its beneficiaries and the existence of sufficient alternative organizations that can perform the functions of the organization in question. This test, however, is not consistent with the results reached in our previous cases. See *id.* at 389, 390. See also *Western Mass. Lifecare Corp.* v. *Assessors of Springfield, supra* at 104. In addition, it would set an exceedingly difficult standard to apply, as it would require the court to delve into the personal finances of individual beneficiaries, determine the existence of comparable alternative organizations, and compare the quality and services of those organizations with the organization in question. We decline to adopt such a test.

New Habitat also contends that the judge erred where she concluded that New Habitat's exemption from Federal taxation was a sufficient remedy. It is not entirely clear how the judge factored New Habitat's Federal tax-exempt status into her final decision. In any event, an organization's treatment as a charity under Federal tax law is an indicator, although not a dispositive one, of an organization's charitable nature for the purposes of tax exemption under G. L. c. 59, § 5, Third. *New England Legal Found.* v. *Boston, supra* at 610 & n.8 (organization's treatment under Federal tax law is indicator of charitable status under G. L. c. 59, § 5, Third). But see *Western Mass. Lifecare Corp.* v. *Assessors of Springfield, supra* at 97, 106 (organization classified under § 501[c][3] of Internal Revenue Code held to be not charitable under G. L. c. 59, § 5, Third). The fact that an organization

has been granted tax-exempt status under Federal law is not grounds to deny it tax-exempt status under G. L. c. 59, § 5. The judge erred to the extent that she concluded otherwise.

*Conclusion.* For the reasons stated above, we conclude that New Habitat is a charitable organization under G. L. c. 59, § 5, Third, and is entitled to a tax exemption on its real property. We vacate the judge's order allowing the tax collector's motion for summary judgment. We remand the case and direct that an order granting New Habitat's motion for summary judgment be entered.

*So ordered.*