HOSPITAL & BENEVOLENT ASSOCIATION *v.* ARKANSAS
BAPTIST STATE CONVENTION.

Opinion delivered April 9, 1928.

1. LOST INSTRUMENTS—BURDEN OF PROOF.—One who claims title
   under an alleged lost instrument must establish the execution, con-
   tents and loss of such instrument by the clearest, most conclusive,
   and satisfactory proof.
2. LOST INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—Evidence *held*
   sufficient to prove the execution and delivery of a lost deed to land,
   and to prove the contents and sufficiency of such instrument of
   conveyance.
3. CHARITIES—TRANSFER OF PROPERTY.—Execution of a deed convey-
   ing a hospital and property by the officers of the hospital charita-
   able association, *held* within the power of the association where
   it tended to perpetuate and promote the purposes of such associa-
   tion, where the association could no longer maintain the hospital,
   while the transferee organization agreed to do so.
4. CHARITIES—RATIFICATION OF DEED.—Evidence *held* sufficient to
   show a ratification by a hospital association of the transfer of its
   property by deed to an organization which agreed to carry on the
   hospital work, though execution of the deed was authorized at a
   called meeting not provided for in the constitution of the asso-
   ciation, where, for several years after the transfer, the association
   made no attempt to set aside or alter the effect of such deed.
5. GIFTS—TRANSACTION HELD TO BE SALE.—Where a hospital associa-
   tion deeded its property to another on the consideration that the
   grantee would assume burdensome obligations of the grantor and
   the grantee expended large sums in improving the property, *held*
   that the transaction was a sale and not a gift.

Appeal from Jefferson Circuit Court; *T. G. Parham,*
Judge; affirmed.

*E. W. Brockman, Palmer Danaher* and *M. Danaher,*
for appellant.

*W. B. Sorrels,* for appellee.

SMITH, J. Appellant brought this suit in ejectment
against the Arkansas Baptist State Convention, herein-
after referred to as the convention, to recover possession
of a hospital and the adjacent grounds located in the
city of Pine Bluff. The defendant convention filed an
answer, alleging its possession and ownership of the
property under a deed from the plaintiff, which was
alleged to have been lost, and, by way of cross-complaint,
the defendant prayed that its lost deed be restored and
held valid, and that its title be quieted against the plain-
tiffs. In an answer to the cross-complaint the plaintiffs
denied the execution of the deed or their power to
execute it.

From the testimony offered at the trial from which
this appeal comes, it appears that seventy ladies, resi-
dents of Pine Bluff, were incorporated by order of the
Jefferson Circuit Court, July 6, 1895, as the Hospital &
Benevolent Association, for the purpose of raising funds
to establish and maintain a hospital in the city of Pine
Bluff. Funds for this purpose were to be raised by
annual dues to be collected from each member of the
association, amounting to $1 a year, and by donations,
legacies and subscriptions from charitably disposed per-
sons.

The constitution of the association provided for an
annual meeting on the first Friday of October in each
year, at which time a president, three vice presidents, a
secretary and a treasurer should be elected, who should
hold office for one year and until their successors were
elected and qualified. It was provided in the constitution
that ten members should constitute a quorum for the
transaction of business. Mrs. J. W. Crawford was elected
president, Mrs. O. J. Taylor was secretary, and Dr. Lil-

lian G. Higginbotham assistant secretary, and the organ-
ization began to function by erecting and operating a
hospital. To raise necessary funds, a mortgage of $4,000
was placed on the property, and other indebtedness was
incurred. The enterprise was not a success, and the
hospital was finally closed, and, after it had been closed
for four or five months, its managing officers and friends
began to cast about to devise means whereby it might
be reopened and operated. Overtures were made to the
convention to take over the hospital, and at a regular
meeting of the hospital association on October 7, 1919,
an amendment to the charter was adopted authorizing
a lease of the property for ninety-nine years. A propo-
sition was submitted to the hospital committee of the
convention to lease the property, but this offer was
declined, and a counter proposition was made to take
over the property, repair it, pay the outstanding indebt-
edness, enlarge the hospital, and operate it, provided a
deed was made to the convention.

A called meeting of the plaintiff hospital association
was held on October 10, 1919, to consider this counter-
proposition, at which seventeen members of the associa-
tion and two non-member friends were present. At this
meeting the following resolution was unanimously
adopted:

"Whereas, the Davis Hospital has been closed for
several months for lack of sufficient funds to repair,
reopen and run it; and whereas, the Baptists have under-
taken to raise large sums for hospital purposes, and the
Arkansas Baptist State Convention has offered to take
a deed to the property and in consideration thereof
agreed to maintain and run the hospital and from time to
time enlarge it, as the demands for enlargement come
and the necessities require, in the judgment of the board
of said convention; and whereas, they have agreed to
keep the name, Davis Hospital, for the institution per-
petually, and to accept a deed requiring such perpetuation
of the name and containing a stipulation that, if they fail

to perpetuate the name, or if they or their assigns or successors should fail to keep the property in reasonably good repair, or should fail or cease to maintain and run the institution as a hospital, then in any such event the title to the property shall at once revert to the grantor; now therefore be it by the Davis Hospital Benevolent Association in meeting assembled, resolved, that the president and secretary, or assistant secretary, of this association be, and they are, hereby authorized and empowered to make a deed to said Arkansas Baptist State Convention, or to such trustee as they may name, conveying to it or them the following described land, lying in Jefferson County, State of Arkansas, to-wit: Lots one and two, in block seventy-six, in Tannehill & Owens' addition to the city of Pine Bluff, for the consideration and purposes and containing the stipulations required by the foregoing preamble; and, for the same consideration and purposes, to include in said deed the furniture and hospital appliances on said land. Only the land and building and the furniture and appliances shall be conveyed. The Davis Hospital Benevolent Association shall reserve to itself such funds, devises and legacies as it now owns, and such devises and legacies as are provided for in wills already made to it or Davis Hospital.''

Pursuant to this resolution, a deed was prepared from the hospital association to the convention, which was duly acknowledged by the president and the assistant secretary of the association. This deed was delivered to a member of the hospital committee of the convention, but was lost without having been recorded.

The cause was tried in the court below, by consent, without a jury, and the court found the fact to be that this deed was executed and delivered and that the title to the property there described passed to the convention, and judgment was rendered accordingly, and from that judgment is this appeal.

The plaintiff association—the appellant here—states in its brief that ''the only issue before the court for deter-

mination is whether the deed claimed by defendant to
have been made was in fact made, and, if so, whether it
was legally made so as to be a valid deed.''

''The rule is well established in this State, as well
as by the authorities generally, that the burden is upon
one who claims title under the alleged lost instrument to
establish the execution, contents, and loss of such instru-
ment by the clearest, most conclusive, and satisfactory
proof.'' *Erwin* v. *Kerrin,* 169 Ark. 183, 274 S. W. 2, and
cases there cited.

The first question for decision is therefore whether
the proof tending to establish the alleged lost deed from
the hospital association to the convention meets this
test.

We think it does, and the court below so found. By
collaboration of the persons interested in the preparation,
execution, and examination of the lost deed it has been
restored, and these persons testified that the restored
deed is substantially identical with the lost deed. Among
the witnesses who testified as to the execution and con-
tents of the lost deed was J. W. Crawford, an attorney at
Pine Bluff, whose wife was the president of the hospital
association. He testified that his wife had devoted much of
her time to the work of the hospital association, and was
much concerned about reopening the hospital. He pre-
pared the lost deed, and in a general way remembered
its recitals, although he had not kept a copy of it, and
testified that the restored deed was substantially iden-
tical with the one he had prepared. After the deed had
been executed and acknowledged, he transmitted it to a
member of the hospital committee of the convention. He
had also prepared the resolution for adoption by the
hospital association authorizing the sale of the property
to the convention. He had kept a copy of this resolution,
and identified the resolution set out above appearing in
the restored deed as identical with the one which he had
prepared for adoption by the association at the called
meeting held on October 10, 1919.

H. T. Allcott testified that he was a notary public, and that, as such, he had taken the acknowledgments of the president and the 'assistant secretary of the hospital association to the deed. He stated in detail the circumstances under which the acknowledgments had been taken.

After the execution and delivery of the deed to the hospital committee of the convention it was submitted for examination and approval to Judge W. R. Donham of Little Rock, a practicing attorney and a member of the hospital committee. Judge Donham testified that he made a careful examination of the deed to determine its sufficiency, and in connection with this examination made copious notes as to its recitals. These notes he had preserved, but the deed itself was lost, and he was unable to find it, after a most exhaustive search. He had not surrendered the possession of the deed to any one, and when he last saw the deed it was in his possession. He testified that the restored deed is substantially identical with the one given him for examination.

The deed was executed to R. Carnahan, H. C. Fox and J. P. Runyan, as trustees, for the use and benefit of the Arkansas Baptist State Convention. Mr. Carnahan was a resident of Pine Bluff, and was one of the visitors who attended the meeting of the hospital association of October 10, and was instrumental in inducing the convention to take over the hospital. He also testified as to the execution of the deed, and it was he who delivered it to the hospital committee of the convention.

The hospital property was accurately described in the deed which conveyed that property to the trustees named, on the conditions and limitations set out in the resolution of the hospital association adopted on October 10, and which was incorporated in the deed.

Several members of the hospital association testified that they were not advised of the meeting held on October 10, and knew nothing of the action taken at that meeting in regard to the sale of the property. They were

advised of the meeting held on October 7, at which time a resolution was adopted which authorized a lease of the property for ninety-nine years; and, while they knew the property had been taken over and was being operated by the convention, they supposed this was done under the authority of the resolution adopted October 7.

The assistant secretary of the association, whose name was signed to the deed, denied having signed or executed it; but, without setting out the testimony in this respect, we announce our conclusion to be that this good lady had merely forgotten the incident. The high character of all the witnesses who have testified is such that the case presents no question of veracity of any of the witnesses. We are sure all testified truthfully, so far as they remembered the facts about which they testified; but, while this is true, we are of opinion that the testimony measures up to the requirements announced in the case of *Erwin* v. *Kerrin, supra,* to prove the execution and delivery of the lost deed and the contents and sufficiency of that instrument.

It is further insisted that, although the execution, contents and delivery of the deed have been sufficiently proved to establish it as a lost instrument, it was not valid as a conveyance, for the reason that it was an *ultra vires* act on the part of the officers of the association who executed the deed, and the case of *Fordyce* v. *Woman's Christian National Library Assn.,* 79 Ark. 550, 96 S. W. 155, 7 L. R. A. (N. S.) 485, is cited in support of that contention. In that case it was held that the property of a charity cannot be sold under an execution on a judgment rendered for the nonfeasance, misfeasance or malfeasance of its agents or trustees, for the reason that a charitable trust cannot be destroyed through the wrongful acts of the trustees, and it is insisted that the officers of the hospital association have, through the execution of the deed, wrongfully destroyed the trust committed to their management.

We do not concur in this view. On the contrary, the purpose of the trust has not been destroyed. The undis-

puted testimony shows that the hospital association had come to the end of its resources, and the trust was about to fail through lack of support. The hospital had been closed, and the property was deteriorating in value, and the debts of the association were unpaid. The deed to the convention required that body to maintain and run the hospital, and from time to time enlarge it as the necessity therefor required, and the conveyance was valid as such so long only as these conditions were complied with. That these conditions have been fully complied with will be later herein shown.

We conclude therefore that the execution of the deed by the officers of the hospital association was not an act which was beyond the power of the corporation itself to authorize, as it tended to perpetuate and promote the purposes of that organization.

It is insisted that the execution of this deed was authorized at a called meeting, which was not provided for in the constitution of the hospital association, and that the body of the members were not notified of the meeting, and that the execution of the deed was therefore unauthorized, and that the members of the association will not be held to have ratified this conveyance through the subsequent action of the convention, for the reason that the members of the hospital association had the right to assume that the possession and occupancy of the hospital by the convention was referable to the resolution adopted at the regular meeting on October 7 authorizing a lease of the property.

We think, however, that it must be held that the hospital association has in fact ratified this deed, even though its execution was not authorized. More than a quorum of the members attended the meeting at which the resolution was adopted authorizing the sale of the property, and the transaction was a sale, and not a gift, as is contended by appellant. The deed was executed upon the consideration of the assumption of burdensome obligations by the convention. It is not intimated that the

meeting of October 10 was surreptitiously called, and there is no reason to even suspect that the action then taken was concealed. All parties appear to have been actuated by the most laudable motives. The resolution then adopted directing the sale of the property was in a form which, if otherwise authorized, would have conferred the power to sell the property. There was nothing to indicate to the convention that it would not take by the deed tendered to it the title which that instrument purported to convey, and there is no reason to doubt that the members who did not attend the meeting of October 10 might, with but slight inquiry, have ascertained the terms and conditions upon which the convention took over the hospital.

The undisputed testimony shows that, after the delivery of the deed, the convention expended $20,000 to put the hospital in condition to be operated, and altogether expenditures aggregating $33,000 were made, including enlargement and equipment, and the institution has been raised to a grade A hospital, and is now being operated as such. In other words, the conditions upon which the deed was executed have been fully complied with, and have been since the date of that deed, which was October 31, 1919. This suit was not filed questioning the title of the convention to the property until June 15, 1925.

The case of *Merchants' & Farmers' Bank* v. *Harris Lbr. Co.,* 103 Ark. 283, 146 S. W. 508, Ann. Cas. 1914B, 713, was one in which the right of the secretary and treasurer of a corporation to execute a chattel mortgage upon the corporate property was questioned, and, in holding the stockholders had ratified that action, the court quoted with approval from 2 Morawetz on Private Corporations (2 ed.), § 623, as follows:

"In 2 Morawetz on Private Corporations (2 ed.), §. 623, it is said: 'If the shareholders who constitute the corporate association unanimously acquiesce in or ratify an act performed by an agent or board on behalf of the corporation, no further question as to the extent of the

powers delegated to the agent or board can arise.  Ratification by all the shareholders would not cure the illegality of an act which is prohibited by the common law or statute; but it would remove any defect of authority in an agent performing the act as between himself and the company.  After such ratification, the company would become chargeable with the act to the same extent as if it had originally authorized it to be done'."

In the same case it was there further said:

"All the shareholders of a corporation may waive the necessity for a meeting of its board of directors, and may, without such meeting, either authorize acts done by its agents within the scope of the powers of such corporation, or ratify those acts which have been done, and, by such authorization or ratification, bind the corporation itself.  The rule that the members of the board of directors have the authority to act only when convened in a board meeting is for the benefit of the shareholders.  The shareholders own the assets, and in fact constitute the corporation.  All the shareholders may therefore waive the necessity for the meeting of all the members of the board of directors in the transaction of any business that is not beyond the powers of the corporation to enter into."

In the case of *American Bonding Co.* v. *Laigle Stave & Lbr. Co.,* 111 Ark. 151, 163 S. W. 167, the question was raised as to the power of an agent of a corporation to execute accommodation paper in the name of the corporation, and, after holding that such right was not within the real or apparent scope of the agent's authority, the court held that such action might be ratified.  It was there said:

"In 2 Thompson on Corporations (2 ed.), § 2019, the rule of acquiescence in or ratification of an unauthorized act of the officers or agents of a corporation is stated as follows:  'Acquiescence for a considerable time by a corporation, through its efficient agencies and the body of its stockholders, in a state of facts, after knowledge or

after such a length of time and such a condition of circumstances that a knowledge is to be inferred, will operate as a ratification. * * * Ratification of this character may rest on the principle of equitable estoppel, on the theory that one man, though innocent, ought not to allow another innocent man to rest in the belief that a voidable engagement is valid until the latter has changed his position. It also rests on the moral consideration that the former, after allowing the hopes of the latter to be raised for a considerable length of time, in respect of whatever benefits may accrue or may have accrued from the engagement, ought not to be allowed to disappoint those hopes. The rule therefore is that, where the agents of a corporation exceed their powers, their principal must, as in the case of a natural person, disaffirm promptly, or at least within a reasonable time, having regard to the circumstances of each case'."

The case of *Common Sense Mining & Milling Co.* v. *Taylor,* 152 S. W. 5, was one in which the president and secretary of the corporation had, without authority, sold the assets of the corporation, and their grantee, under the unauthorized conveyance, expended a large amount of money on the property conveyed. For a period of five months the stockholders remained inert, and, when finally they called the conveyance in question, the court held that, by their inaction, they had ratified the unauthorized act. In so holding, the Supreme Court of Missouri, through Graves, P. J., said:

"Judge Thompson, in 10 Cyc., p. 1065, says: 'Subject to exceptions in case of municipal or governmental corporations, which are held to a strict exercise of their powers, the general rule is that corporations quite as much as individuals are held to a careful adherence to truth in their dealings with mankind, and cannot, by representations or by silence, involve others in onerous engagements and then defeat the just expectations which their conduct has superinduced. A round statement of this doctrine is that estoppels *in pais* operate against cor-

porations in like manner as against natural persons.'
And further discussing the doctrine of estoppel as appli-
cable to corporations, at page 1066 of the same volume,
says: 'As more fully explained later, the same prin-
ciple validates the voidable acts of corporations, on the
theory of a ratification by the acquiescence of all the
shareholders, so that, after a long delay, in which time
other rights have supervened or expectations have been
founded, upon the faith of an existing state of facts, the
shareholders will be precluded from maintaining actions
in equity to undo what has been done by the directors or
officers without their authority.' The same writer, in
his work on Corporations (2 Thompson on Corporations,
2 ed., par. 1960, p. 1048), says: 'In the law of agency
there is a rule that, if one accepts the benefits of an
unauthorized contract made in his behalf by another, he
is bound by its terms the same as if he had entered into
the contract in person or had expressly ratified it, pro-
vided, of course, that he had full knowledge of all the
facts, and he is thereby estopped from repudiating the
contract without restoring the benefits and putting the
other party *in statu quo.* This principle is applicable,
in its fullest sense, to corporations which, from their
nature, can act only through the instrumentality of
agents. If therefore an officer of a corporation, or other
person, assuming to have power to bind the corporation,
by a given contract enters into the contract for the cor-
poration, and the corporation receives the fruits of the
contract, and retains them after acquiring knowledge of
the circumstances attending the making of the contract, it
will thereby become estopped from afterwards rescinding
or undoing the contract. In other words, by retaining the
fruits of the unauthorized contract, with knowledge of
the circumstances which entitle it to its election either
to affirm or disaffirm it, the corporation ratifies the
contract and makes it good by adoption.' In the same
volume, at page 1056, it is further said: 'It is not strictly
necessary to the proper application of the principle of

estoppel that the corporation should have received a benefit from the contract, but it is sufficient that the other party has acted on the faith of it to his disadvantage, as where he has expended money on the faith of it. The reason of the rule is that honesty and fair dealing are the highest public policy, and that a private corporation, which is a mere collection of individuals, is no more privileged to repudiate its engagements and act dishonestly than a single individual is'."

The court below expressly found the fact to be that the members of the hospital association, whose relation to that organization is not dissimilar to that of shareholders in the ordinary private corporation, had, by their inaction, ratified the sale of the property to the convention, and it is our opinion that the testimony sustains that finding.

The judgment of the court below must therefore be affirmed, and it is so ordered.