KATHERINE DENCKLA and DOROTHY STEWART,
Plaintiffs,

*vs.*

INDEPENDENCE FOUNDATION (formerly known as Donner Foundation Incorporated), ROBERT MAES and ALEXANDER F. BARBIERI,
Defendants,

ROBERT DONNER, SR., ROBERT DONNER, JR., MARGARET DONNER SPENCER, JOSEPH W. DONNER, CARROLL DONNER ANNAN, WILLIAM DONNER ROOSEVELT and CURTIN WINSOR, JR.,
Intervenors.

*New Castle, May 22, 1962.*

*John VanBrunt,* of Killoran & VanBrunt, Wilmington, for plaintiffs. *Richard K. Stevens* and *Fred C. Aldridge, Jr.,* of Stradley, Roman, Stevens & Young, Philadelphia, Pa., of counsel.

*Howard L. Williams* and *Henry N. Herndon, Jr.,* of Morris, James, Hitchens & Williams, Wilmington, for defendants. *Alexander F. Barbieri,* of Erskine, Barbieri & Sheer, Philadelphia, Pa., of counsel.

*Robert H. Richards, Jr.,* of Richards, Layton & Finger, Wilmington, for intervenors. *James A. Fowler, Jr.,* and *J. Bernard Quigley* of Cahill, Gordon, Reindel & Ohl, New York City, of counsel.

SHORT, Vice Chancellor: This action challenges the validity of a purported grant of fifty-five per cent of the assets of defendant Independence Foundation, a corporation of the State of Delaware, formerly known as Donner Foundation (Incorporated), to William H. Donner Foundation, Inc., a non-stock, charitable corporation of the District of Columbia. Plaintiffs are members of defendant Independence Foundation. On November 17, 1961 plaintiffs applied for and obtained from this court an order restraining Independence Foundation from "soliciting and/or receiving the votes of the members of said corporation at the Special Meeting of Members called for November 17, 1961, * * * for the purpose of approving or ratifying the 'grant' of fifty-five per cent of the net assets of said corporation to a new corporation by action of the Board of Directors of said corporation at a special meeting on October 27, 1961." By stipulation filed December 13, 1961, and approved by the court, leave to intervene was granted to certain members of Independence Foundation who are also the organizers of William H. Donner Foundation, Inc. The intervenors' petition to vacate the restraining order issued on November 17, 1961 has been briefed and argued and is now pending before the court.

On December 1, 1961 defendant Independence Foundation filed a motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted. This motion is supported by affidavits and should, therefore, be considered by the court as a motion for summary judgment.

Donner Foundation (Incorporated) was incorporated under the laws of the State of Delaware in 1945 by William H. Donner as a non-stock, charitable membership corporation. It was formed for the purpose of taking over the assets of The International Cancer Research Foundation, a Pennsylvania corporation. The name of the foundation was changed to Independence Foundation by an amendment to its certificate dated October 27, 1961. By Article Third of the Certificate of Incorporation of Donner Foundation (Incorporated), its business and purposes are stated in the following language:

"THIRD: The nature of the business and the objects and purposes to be transacted, promoted and carried on by this corporation shall be to acquire by grant, gift, purchase, devise, bequest, or otherwise, real and personal property of every class and description and to use and apply the principal thereof and the income therefrom exclusively in such charitable benevolent, scientific and educational activities as will promote the well-being of mankind and the alleviation of human suffering, and without in any way intending to limit such general purposes by any of the specific objects and powers hereinafter referred to, said corporation shall have power:

"(a) To further research work as to the causes, prevention, control, treatment and cure of diseases, and to devise ways and means of encouraging and stimulating investigation and investigators throughout the world in this field; to assist in the establishment of cooperation and contact among research workers; to coordinate their efforts and to collect, consolidate and set forth data thereon; to ascertain and propose specific problems for investigation and to verify reported achievements; to assist in the construction of new and improved experimental apparatus intended to be useful in the treatment of disease and to assist and engage in such other similar activities as may be incidental and necessary to the accomplishment of said purposes.

"(b) To establish and maintain charitable, benevolent, scientific and/or educational agencies and institutions.

"(c) To contribute to, aid and/or assist agencies and/or institutions now or hereafter established for such charitable, benevolent, scientific and/or educational purposes.

"(d) To publish and circulate reports, pamphlets, articles and other matter dealing with charitable, benevolent, scientific and/or educational purposes.

"(e) To make awards, grant scholarships and create endowments for the purpose of promoting or carrying out any of its objects or purposes.

"(f) To comply with the directions of the donors or testators with regard to any property given, devised or bequeathed to

it, for any such charitable, benevolent, scientific or educational purpose.

"(g) To enter into, make, perform and carry out contracts of every form or kind for any corporate purpose without limit as to amount, with any person, firm, association or corporation.

"(h) To do any and all such acts as are necessary or convenient to the attainment of any of the objects and purposes herein set forth to the same extent and as fully as any natural person might or could do.

"(i) To have offices and promote and carry out its objects and purposes within and without the State of Delaware, District of Columbia, other States and Territories or Colonies of the United States, and in any and all foreign countries, and in general to have all powers conferred on a corporation organized under the laws of the State of Delaware."

Article Fourth of the Certificate of Incorporation is as follows:

"FOURTH: This corporation is instituted for purely charitable purposes and for the accomplishment of the ends hereinbefore set forth. It is not organized for profit and shall have no authority to issue capital stock. The conditions of membership in the corporation shall be such as may be provided from time to time by the By-Laws of the corporation. Membership in this corporation shall not entitle such member to any interest or share in the property or assets of this corporation, and in the event of the dissolution of the corporation for any cause whatsoever, the property and assets of this corporation shall not, in any event, be distributed among the members, but shall be disposed of in such a manner as to accomplish the purposes of this corporation."

Article Eighth of the Certificate of Incorporation is as follows:

"EIGHTH: The affairs of the corporation are to be conducted by the officers and persons fixed by the By-laws, and such officers or persons are to be chosen at the times and places fixed by the By-laws."

Article Ninth and subparagraph (a) thereof are as follows:

"NINTH: In furtherance, and not in limitation, of the powers conferred by statute or by the By-laws of this corporation, the Governing Board is hereby expressly authorized:

"(a) To make, alter, amend or rescind the By-laws of the corporation and the rules and regulations relating to and governing the conduct of operations and use of the facilities and property of the corporation;"

*Section* 1 of *Article* III of the by-laws of Independence Foundation provides:

"Members. Section 1. Members of the Foundation shall be the lineal descendants of William H. Donner who shall have reached their majority, and such other persons as may be elected from time to time by the existing members. Any member so elected may be removed at any time by a majority of the existing members. In addition to the membership comprising the lineal descendants of William H. Donner (by birth and by or through adoption) and such elected members, each of the five Officers named in Section 1 of Article VI of these By-laws, during the terms of their respective offices, shall be members of this Foundation, with all of the rights and privileges enjoyed by any other class of members."

*Section* 2 of *Article* III of the by-laws provides for the annual meeting of members for the election of directors.

*Section* 1 of *Article* IV of the by-laws provides as follows:

"ARTICLE IV—Directors. Section 1. The business and affairs of the Foundation shall be managed by a board of six directors, who may exercise all of the powers of the Foundation except those specifically reserved or granted to the members by law or by these By-laws."

Though of little pertinency, the affidavits filed in support of, and against the motion reveal that since the death of William H. Donner

in 1953 many disputes and disagreements with respect to membership in Independence and its grant policy have developed, and that in order to resolve these disagreements the plan was formulated whereby Independence would grant to a new foundation a substantial part of its funds. The affidavits also reveal that this plan apparently met with approval "in principle" of all parties concerned, including plaintiffs, and, in fact, that seventy seven per cent of the members have signified their approval in writing. They further disclose that the purposes of the new foundation are substantially the same as those of Independence, but that the former is separately administered and not subject to the control of the latter.[1]

In order to give proper and due consideration to the issues raised by defendants' motion to dismiss, the court, after reviewing the pleadings and affidavits filed in support of the motion, considered that additional facts pertaining to the historical background of Independence Foundation and its grant policies should be before the court. Accordingly, counsel for the several parties were requested to supply any available data in that regard. Counsel for Independence has complied with the court's request by filing an affidavit of its president and certain documents in support thereof. These instruments tend to establish the following facts: During his lifetime William H. Donner was instrumental in the formation of three charitable foundations. The first of these was the International Cancer Research Foundation (Research Foundation) which was incorporated under the laws of the state of Pennsylvania on April 27, 1932 for the purpose of "further research as to the causes, prevention, control, treatment and cure of those diseases * * * commonly called Cancer." The funds required to carry out this foundation's purposes were provided by William H. Donner. The Sixth Article of the Certificate of Incorporation provided: "SIXTH: The directors shall be styled Administrative Trus-

---

1. By the Third Article of the Certificate of Incorporation of The William H. Donner Foundation, Inc., its general purposes are stated to be: "To receive, by gift, devise, bequest or otherwise, maintain and dispose of a fund or funds of real or personal property, or both, and to apply the income and principal thereof, in whole or in part, exclusively for charitable, scientific, literary or educational purposes, by such agencies and means as may from time to time be found appropriate therefor in pursuance of such purposes."

tees and their number shall be seven or such other number as the corporation may from time to time by By-Law determine." In January 1940 the Sixth Article of the Certificate of Incorporation was amended to read "There shall be seven Directors or such other number as the corporation may from time to time by By-Law determine." The amendment was signed by William H. Donner as president of the Research Foundation. In August 1945 the certificate of incorporation of the Research Foundation was further amended to state its corporate purposes in language identical with that appearing in the Third Article of the Certificate of Incorporation of Donner Foundation (Incorporated), now Independence Foundation, including subparagraphs (a) through (h) inclusive. This amendment also was signed by William H. Donner as president of the Research Foundation. According to the minutes of a special meeting of the board of directors of the Research Foundation held March 27, 1946, and called for the purpose of considering the advisability of dissolving the corporation, William H. Donner, the president, reported that all of the assets of the Research Foundation had been transferred to Donner Foundation (Incorporated) pursuant to the terms of a contract dated December 31, 1945.[2] The minutes of this special meeting reflect the adoption of a resolution to dissolve the Research Foundation. The preamble to such resolution sets forth the general purpose of the corporation, as amended, and recites, in general terms, receipt from time to time of donations to the corporation, that "all of the property so donated has been properly and legally expended in the work to which the corporation is dedicated, and the corporation is, therefore, without funds or property of any kind or description," that "the corporation has fully carried out the intended purposes for which it was established," and that under the circumstances there was no longer any need or purpose for continuing its corporate existence. The Petition for Dissolution filed in the Court of Common Pleas for the County of Philadelphia, Pennsylvania, pursuant to such resolution was approved by the court on June 25, 1946.

---

2. This contract has not been made available for the court's inspection. Counsel for Independence reports that a search of the files of the corporation has failed to produce the contract or a copy thereof.

It has already been noted that the second Donner foundation was formed, at the instance of William H. Donner, in the name of Donner Foundation (Incorporated), now Independence Foundation, under the laws of this state in 1945. The funds required for its corporate purposes were supplied by the transfer of the assets of the Research Foundation.

The third Donner foundation, Donner, Canadian Foundation, a Canadian charitable corporation having corporate purposes similar to those of Independence, was incorporated under Part II of the Company's Act, 1934, of Canada in October 1950. This foundation also was a non-profit, membership corporation. The funds required by Donner Canadian Foundation to carry on its corporate purposes were provided "by way of donation" by Donner Foundation (Incorporated), now Independence. This donation was in the form of a grant of $420,000 which was made pursuant to a resolution of the directors of Donner Foundation (Incorporated) dated December 21, 1950.

The primary question presented for determination under the present motion is whether or not Independence Foundation has the power to grant its funds to another, separately administered, foundation with similar purposes. Defendants contend that the power is expressly conferred by the Third Article of the certificate of incorporation of Independence and that since the management of corporate affairs is vested solely in the Board of Directors "who may exercise all of the powers of the Foundation," membership approval of the grant is not required. They further contend that even though exercise of the power should be held to be subject to approval of the members, approval by a majority thereof is sufficient. Plaintiffs, on the other hand, contend that the certificate of incorporation of Independence confers no authority, either express or implied, to make the grant in question, and that under principles applicable to trust law, which, they argue, are here controlling, Independence should not be permitted to transfer funds for administration by another foundation.

Plaintiffs, both at oral argument and in their brief, devote considerable discussion to the point that an incorporated charitable foundation is governed by the same rules of law as are charitable trusts. They have cited various texts and cases in support of this argument.

See *Restatement of Trusts,* 2d, § 348, *Comment* (f), and § 379, *Comment* (b); *Scott on Trusts,* §§ 348, 379; *Massachusetts Charitable Mechanic Ass'n* v. *Beede,* 320 *Mass.* 601, 70 *N.E.2d* 825; *In Re Craig's Estate,* 356 *Pa.* 564, 52 *A.2d* 650; *Loechel* v. *School District of Borough of Columbia,* 369 *Pa.* 132, 85 *A.2d* 81. Whether or not these and other authorities sustain this contention it is not necessary to decide. Suffice it to say that there is ground for doubt. See Bogart on *Trusts and Trustees,* § 324; *Starr* v. *Minister & Trustees of Starr Methodist Protestant Church,* 112 *Md.* 171, 76 *A.* 595; The *American Institute of Architects* v. *Attorney General,* 332 *Mass.* 619, 127 *N.E.2d* 161; *Hospital & Benevolent Ass'n* v. *Arkansas Baptist State Convention,* 176 *Ark.* 946, 4 *S.W.2d* 933; 64 *Harvard Law Review* 1168. Determination of the issues presented here is dependent upon the extent of the powers conferred upon Independence by its certificate of incorporation. If the power to make the contested grant is either expressly or by necessary implication given by its charter then it matters not whether trust law or corporate law is applicable. Conversely, if the power is not so given the grant is ultra vires and ineffective, at least in the absence of unanimous membership approval, and, perhaps, even then.

Charitable agencies, for the purpose of considering the present issues, are of two classes; first, those which are themselves actively and directly engaged in doing charitable work, and second, those which indirectly engage in charitable work by providing funds to agencies of the first class for carrying on their charitable purposes. Independence is, of course, of the second class, as is William H. Donner Foundation, Inc. Plaintiffs say that it is evident from a reading of the general purpose clause, as expressed in the Third Article of the Certificate of Incorporation of Independence, that it is not intended that Independence would be actively engaged in charitable activities, but rather that it be "the almoner of funds." By the use of this expression plaintiffs seek to place on the general purpose clause a limitation of power which is wholly unjustified. Certainly, a corporation whose purpose is to make grants for charitable activities is itself engaged in a charitable activity. The fact that it is recognized and treated as a *charitable* corporation, with all the incidents attendant thereto, so signifies. Moreover, "charity and charitable corporations are not

limited to almsgiving, but comprehend a wider field of activity for the improvement of mankind." *Springfield Y. M. C. A.* v. *Board of Assessors, 284 Mass.* 1, 187 *N.E.* 104. The characterization of Independence as a "almoner of funds" is inappropriate. It is, rather, an endowed foundation charged by the mandate of its charter with using and applying its funds exclusively in charitable activities for the welfare of mankind. Where the activity to which a grant is made is dedicated to applying its funds "exclusively for charitable, scientific, literary or educational purposes, by such agencies and means as may from time to time be found appropriate therefor in pursuance of such purposes," the grant is, in my opinion, clearly "in such charitable * * * activities as will promote the wellbeing of mankind." The fact that the transfer of funds does not result in immediate benefit to an ultimate beneficiary of the charitable purpose does not render the grant any the less one to promote wellbeing. It can hardly be contended that a gift to an organization such as the Red Cross would not be for a charitable activity. Yet even that gift would not reach those who are intended to be benefited until it is applied for their use or benefit. I find no merit in plaintiffs' contention that a transfer of funds by Independence to another foundation is in conflict with the mandate of the general purpose clause of its charter to use and apply its funds "exclusively" in the designated charitable activities.

In addition to the general purposes stated in its certificate of incorporation Independence is granted certain specific powers "without in any way intending to limit such general purposes." Among these is the power "[t]o establish and maintain charitable, benevolent, scientific and/or educational agencies and institutions,"[3] and, "[t]o contribute to, aid and/or assist agencies and/or institutions now or hereafter established for such charitable, benevolent, scientific and/or educational purposes."[4] Defendants contend that the quoted specific powers expressly authorize the grant in question. Plaintiffs contend to the contrary. They say that the specific purposes must be read in the light of the general purpose clause which limits agencies and institutions to which grants may be made to those that are actively engaged in promoting the wellbeing of mankind. This contention

3. Subparagraph (b) Article Third.
4. Subparagraph (c) Article Third.

has already been disposed of. But plaintiffs further argue that subparagraph (b) of the Third Article does not confer the power to make the contested grant because it is clear that Independence has not *established*, nor will it *maintain* the William H. Donner Foundation, Inc. Whatever merit there may be to this contention I need not pause to consider for I am satisfied that the power which Independence has seen fit to exercise is clearly conferred by subparagraph (c) of the Third Article. I say this in full recognition of plaintiffs' contention that a grant of $25,000,000 is more than a mere "contribution, aid and assistance." By subparagraph (e) of the Third Article the power to "create endowments for the purpose of promoting or carrying out any of its objects or purposes" is expressly conferred. Moreover, what criteria is to be applied in determining what is or is not a "contribution"? Plaintiffs argue that this subparagraph was intended to apply only to contributions in the normal course. What, one might ask, is the normal course of a charitable foundation whose purpose is to give away its funds? The answer seems plain: Whatever may tend to promote its purposes. In the final analysis the determination of the amount of a "contribution" is within the considered business judgment of the board of directors.

While perhaps of little legal significance it is to be noted that the founder, William H. Donner, himself apparently considered language identical to the general purpose clause and the several subparagraphs of the Third Article of Independence's charter as empowering a foundation to transfer its funds to another foundation. This is evidenced by the transfer of all the assets of the International Cancer Research Foundation, the Pennsylvania corporation, to Donner Foundation (Incorporated), now Independence, the Delaware corporation, which was organized by Donner to take over the assets of the Research Foundation. It is further evidenced by the grant of nearly half a million dollars by Donner Foundation (Incorporated), now Independence, to endow Donner Canadian Foundation, a separately administered charitable corporation. This grant was made by the board of directors of the Delaware corporation, presumably at the instance of Donner and apparently without formal membership approval. Plaintiffs, so far as the record shows, did not object to this substantial grant. In their brief plaintiffs observe that "it is perfectly

obvious that William H. Donner would not have approved" of the "spin-off" of funds. The recited activities of Mr. Donner completely refute plaintiffs' observations. Moreover, they tend to negate plaintiffs' assertion that Donner "wanted all of his descendants * * * to be in a position of active participation."

Permeating the whole course of plaintiffs' argument is the thought that by granting 55% of its assets to a separately administered foundation Independence has completely abdicated its right to administer the funds. The simple answer to this thought is that any unrestricted grant made by Independence has the same result. For example, a grant without restriction to an agency or institution such as the Red Cross or Boys' Town, agencies which plaintiffs admit are directly engaged in charitable work, would have the effect of relinquishing control over the application of the funds granted. The recipient of such an award could use the funds for any one or more of its purposes. In the final analysis, the purpose of Independence is, as defendants point out, to give away its funds to agencies which will use the funds for the purposes expressed in the charter of the donor. Whether such gifts are to organizations which directly apply the funds to a charitable purpose or through which the same result is accomplished is immaterial in the determination of whether or not a specific grant is in furtherance of the wellbeing of mankind. Moreover, the fact that William H. Donner Foundation, Inc. will be governed by a separate board and without any control by Independence may be desirable. See Andrews on Philanthropic Foundations, 215.

Since it is within the power of Independence to make the questioned grant there remains only the inquiry as to what body of the corporation could exercise that power. Article Eighth of the Certificate of Incorporation provides that its "affairs are to be conducted by the officers and persons fixed by the By-Laws." Section 1 of Article Four of the by-laws provides: "The business and affairs of the Foundation shall be managed by a board of six directors who may exercise all of the powers of the Foundation except those specifically reserved or granted to the members by law or by these By-Laws." The only power specifically granted to the members by the by-laws is: to ari-

nually elect the directors. Plaintiffs have not pointed out any appropriate power reserved or granted to the members by law, nor is the court aware of any such power. On the other hand, the by-laws expressly provide that the board of directors "may exercise all of the powers of the Foundation." This is merely in accordance with the provisions of the General Corporation Law of this state that the business of every corporation should be managed by a board of directors. § 141, *Title 8 Del.C.* Nor does the fact that the grant involved was of a substantial, or even a major portion of the assets affect the power conferred upon the board of directors "to exercise all the powers of the Foundation." So long as the grant was in furtherance of corporate purposes the power to make it was expressly conferred by its charter and, a fortiori, upon its board of directors. Membership approval is not required.

■ Defendants' motion to dismiss the original complaint is granted.

After the motion hereinbefore considered was filed plaintiffs amended their complaint by adding thereto an allegation, upon information and belief, that the grant in question "represented a compromise settlement [of differences among the members], was influenced by the threat of litigation and was not a grant of funds for charitable purposes in the ordinary course." In view of what has heretofore been said it is doubtful that this amendment in any way adds to or strengthens plaintiffs' position. In so stating I do not mean to hold that the amendment does not state a cause of action. This issue has neither been briefed nor argued before me. However, as indicated, I do entertain doubt. Therefore, it is proper at this time to pass upon the propriety of the motion of the intervenors to vacate the restraining order issued by this court on November 17, 1961. It being doubtful, in my present view, that any adjudication in plaintiffs favor can ultimately be entered in this cause, the restraining order issued on November 17, 1961, restraining Independence from "soliciting and/or receiving the votes of the members of said corporation at the Special Meeting of Members called for November 17, 1961, * * * for the purpose of approving or ratifying the 'grant' of fifty-five per cent of the net assets of said corporation to a new corporation by action of

the Board of Directors of said corporation at a special meeting on October 27, 1961", is hereby vacated and dissolved.

Present order on notice.