193 A.2d 538 (1963)
Katherine DENCKLA, Plaintiff Below, Appellant,
v.
INDEPENDENCE FOUNDATION (formerly known as Donner Foundation (Incorporated), Robert Maes and Alexander F. Barbieri, Defendants Below, Appellees.
Supreme Court of Delaware.
July 30, 1963.
John Van Brunt, Jr., Daniel M. Kristol and Arthur F. DiSabatino of Killoran & Van Brunt, Wilmington, for appellant. Sol A. Rosenblatt, New York City, of counsel.
Howard L. Williams and Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, for appellee Independence Foundation.
TERRY, C. J., and WOLCOTT and CAREY, JJ., sitting.
*539 WOLCOTT, Justice.
This action was filed in the Court of Chancery by two sisters, adoptive daughters of William H. Donner, deceased, the founder of Donner Foundation (Incorporated), now known as Independence Foundation, defendant in the cause. Also named as defendants were two individuals, Maes and Barbieri, who are members, officers and directors of Independence. These individuals were not served and have not appeared in the action.
The appeal is taken by one of the two co-plaintiffs from an order granting partial summary judgment on the original complaint in favor of Independence, and from a second order denying appellant's motion for leave to file an amended complaint and dismissing the action. The action attacks the validity of a grant by Independence of approximately 55% of its assets to William H. Donner Foundation, a newly-formed foundation having the same purposes as Independence.
Independence is a non-stock membership charitable corporation organized under the laws of this State. Originally formed as Donner Foundation (Incorporated), by amendment to its Certificate of Incorporation its name was charged to Independence Foundation as a step in the plan of creating and endowing the William H. Donner Foundation, all of which more fully appears hereafter.
The late William H. Donner, a wealthy man, the founder of Independence, established and endowed three charitable foundations in his lifetime, all as non-profit charitable corporations. He first incorporated International Cancer Research Foundation, the purpose of which was to devote its assets to the furtherance of research into the causes and cure of cancer. He later incorporated Donner Foundation (Incorporated), now Independence, under the laws of Delaware as a non-stock charitable membership corporation for the purpose of taking *540 over all the assets of International Cancer Research Foundation. The assets of the Research Foundation were turned over to Independence in 1945. In 1950 the third foundation, known as Donner Canadian Foundation, was incorporated under Canadian law with purposes similar to Independence. The Canadian Foundation was endowed by a grant of $420,000 from Independence.
In his lifetime William H. Donner dominated and controlled the activities of Independence, but in 1953 he died. Following his death disputes and disagreements arose among the members of Independence. The members, generally speaking, divided into two contending factions. One faction was made up of lineal descendants of William H. Donner, while the other consisted largely of the adoptive daughters, plaintiffs herein, and certain non-family members and officers. The division of opinion between the factions arose from a difference of view concerning the grant policies of Independence. By 1960 the disagreement had reached a point where all of the members agreed, in principle at least, that it was desirable to divide the Foundation into two, with the disputing factions each in control of one of the resulting foundations.
To effect this division the William H. Donner Foundation, Inc., a charitable corporation of the District of Columbia, was formed and the name of Donner Foundation (Incorporated) changed to Independence Foundation. The directors of Independence thereupon granted approximately 55% of the assets of Independence to the William H. Donner Foundation. The dollar amount of this grant was approximately $25,000,000.
Prior to the actual grant to the William H. Donner Foundation the directors of Independence had received approval in principle of the plan to divide Independence from all of the members of Independence including the appellant and her sister, her co-plaintiff, and 77% of the members had expressed their approval of the grant in writing. The plaintiffs did not approve the grant in writing.
During the interval following the death of William H. Donner and while the controversy between the factions of members was going on, the Board of Directors and the members of Independence had acted to accomplish several things. By amendment to the By-Laws the adoptive daughters of William H. Donner, plaintiffs herein, and their lineal descendants upon coming of age became members of Independence; several non-family members were elected, and the By-Laws were amended to provide that the officers of the Foundation should ex officio be members. It is charged by appellant that as a result of these steps and as a result of the division, the non-family members are left in control of Independence contrary to the desire of William H. Donner, the founder. It appears, however, that throughout this unfortunate family squabble the appellant sided with the so-called non-family faction against the family faction.
Upon the formation of the William H. Donner Foundation and its endowment, the Donner family members resigned as members of Independence and became members of and in control of the William H. Donner Foundation. The appellant and her sister were thereupon left as members of Independence in an alleged minority position with no effective voice in the control of Independence.
In the opinion of the directors of Independence the Board had authority under its Certificate of Incorporation and By-Laws to make the grant to the William H. Donner Foundation without membership approval but, nevertheless, notice of a special meeting was sent to all members for the purpose of having the formal approval of the members recorded in the minutes of Independence.
Prior to the holding of the special meeting of members, this action was filed and the special meeting was restrained by order of the Vice Chancellor.
Thereafter, the Donner family members of Independence who had resigned as members in order to become members of William H. Donner Foundation petitioned to *541 intervene and to dissolve the restraining order. Ultimately the restraining order was dissolved and the intervening petitioners discharged.
The original complaint recited briefly the facts outlined above and questioned the legality of the action of the Board of Directors of Independence in granting 55% of the Independence assets to another charitable corporation, and also questioned the desirability of the grant from the stand-point of the charitable objects and purposes of Independence.
Independence moved to dismiss the complaint for failure to state a cause of action. Prior to the decision of the Vice Chancellor upon this motion, treated as a motion for summary judgment by reason of the affidavits filed in connection with it, the plaintiffs amended the original complaint by the addition of a paragraph numbered 10. The new paragraph 10 alleged upon information and belief that the grant of 55% of the assets of Independence to the William H. Donner Foundation was made in order to silence threats of litigation made by the Donner family group responsible for the organization of the William H. Donner Foundation, Inc., and therefore represented a compromise settlement influenced by the threat of litigation, and was not a grant of Independence funds for charitable purposes in the ordinary course of events.
Appellant argues that an incorporated charitable foundation is governed by the same rules of law as are trustees of a charitable trust. She argues that as trustees of a charitable trust the directors of Independence may not divest themselves of control over the Foundation's funds by delegation to another, since such a delegation is an abrogation of the trust upon which they hold such funds as trustees. As a rule of trust law, we assume this is correct, but the prime question before us is whether or not the rule is applicable in this instance.
It is sometimes important to determine whether or not a gift to a charitable corporation is an absolute gift to be used by the corporation for one or more of its corporate purposes, or whether it is a gift of such nature as to make the charitable corporation trustee of a charitable trust. If the gift is outright to the corporation to be used for its corporate purposes no trust is involved in a technical sense. The resulting duty on the part of the corporation is to use the property solely for its corporate purposes and not to do an ultra vires act. 2 Bogert, Trusts and Trustees, § 324; 3 Scott on Trusts, § 348.1. In a loose sense, therefore, the assets of a charitable corporation are trust funds, but the extent and measure of that trust with respect to assets given outright to it are to be determined by the Certificate of Incorporation and By-Laws of the charitable corporation. Unless assets are given it upon express limitations and conditions, no charitable trust has been created in the technical sense.
Appellant cites Restatement of the Law, Trusts (2d), § 348, comment (f) in support of her argument, but we think the cited text is not contrary to the views expressed in Bogert and Scott. It is clear from comment (f) that if property is given to a charitable corporation without restriction as to its disposition the corporation is only under a duty not to divert the property to anything other than one or more of the charitable purposes for which the corporation is organized. This being so, a charitable trust in the technical sense is not created and the test as to the legality of action taken by the governing board of the corporation is to be determined in accordance with principles of corporate law rather than principles governing the fiduciary relationship between trustees of a technical trust and their trust.
Appellant relies heavily on Massachusetts Charitable Mechanic Ass'n v. Beede, 320 Mass. 601, 70 N.E.2d 825. We think, however, the Beede case does not go as far as appellant says it goes. On the contrary, this decision recognizes the distinction between a charitable corporation and a charitable *542 trust in the technical sense, even though it is stated that in many respects the two are comparable. The case, however, is a clear recognition of the rule that the purposes for which a charitable corporation holds its own property not granted upon an express trust and the uses to which that property may be put, are to be "determined by general statute or by its charter rather than by contract with some founder or his estate."
We think, therefore, that since the assets of Independence were granted it by William H. Donner as a general grant for the corporate purposes of Independence, and were not made subject to express conditions or upon express trusts, that Independence may utilize those assets for one or more of its corporate purposes in accordance with its Certificate of Incorporation and By-Laws duly adopted for its governance. For further authority in accord with this view, see In re Watson's Estate, 314 Pa. 179, 170 A. 254; In re Myra Foundation (N.D.), 112 N.W.2d 552; Holden Hospital Corp. v. Southern Illinois Hospital Corp., 22 Ill.2d 150, 174 N.E.2d 793; Hospital & Benevolent Ass'n v. Arkansas Baptist State Convention, 176 Ark. 946, 4 S.W.2d 933; 64 Harv.L.Rev. 1168.
Under the Delaware General Corporation Law, by 8 Del.C. § 141(e), it is directed that the business of every non-profit corporation organized under that law "shall be managed as provided in its certificate of incorporation." We turn, therefore, to the Certificate of Incorporation of Independence to determine whether or not its Board of Directors may legally grant 55% of its assets to another charitable corporation with almost identical purposes.
Article Third of the Certificate of Incorporation prescribes the nature of the business and the objects and purposes of Independence in part as follows:
"THIRD: The nature of the business and the objects and purposes to be transacted, promoted and carried on by this corporation shall be to acquire by grant, gift, purchase, devise, bequest, or otherwise, real and personal property of every class and description and to use and apply the principal thereof and the income therefrom exclusively in such charitable benevolent, scientific and educational activities as will promote the well-being of mankind and the alleviation of human suffering, and without in any way intending to limit such general purposes by any of the specific objects and powers hereinafter referred to, said corporation shall have power:
"(a) To further research work as to the causes, prevention, control, treatment and cure of diseases, and to divise ways and means of encouraging and stimulating investigation and investigators throughout the world in this field; * * *
"(b) To establish and maintain charitable, benevolent, scientific and/or educational agencies and institutions.
"(c) To contribute to, aid and/or assist agencies and/or institutions now or hereafter established for such charitable, benevolent, scientific and/or educational purposes.
"(d) * * *
"(e) To make awards, grant scholarships and create endowments for the purpose of promoting or carrying out any of its objects or purposes.
"(f) To comply with the directions of the donors or testators with regard to any property given, devised or bequeathed to it, for any such charitable, benevolent, scientific or educational purpose.
"(g) To enter into, make, perform and carry out contracts of every form or kind for any corporate purpose without limit as to amount, with any person, firm, association or corporation.

*543 "(h) To do any and all such acts as are necessary or convenient to the attainment of any of the objects and purposes herein set forth to the same extent and as fully as any natural person might or could do.
"(i) * * *"
Article Fourth of the Certificate of Incorporation provides as follows:
"FOURTH: This corporation is instituted for purely charitable purposes and for the accomplishment of the ends hereinbefore set forth. It is not organized for profit and shall have no authority to issue capital stock. The conditions of membership in the corporation shall be such as may be provided from time to time by the By-Laws of the corporation. Membership in this corporation shall not entitle such member to any interest or share in the property or assets of this corporation, and in the event of the dissolution of the corporation for any cause whatsoever, the property and assets of this corporation shall not, in any event, be distributed among the members, but shall be disposed of in such a manner as to accomplish the purposes of this corporation."
Article Eighth of the Certificate of Incorporation provides that the corporate affairs are to be conducted by the officers and persons fixed by the By-Laws, and by Article Ninth the Board of Directors are empowered to amend the By-Laws of the corporation.
By Article III, Section 1 of the By-Laws, the membership of Independence is defined as the lineal descendants and adopted descendants of William H. Donner who have reached their majority, "such other persons as may be elected from time to time by the existing members," and each of the five officers during the terms of their respective offices.
Article IV, Section 1 of the By-Laws provides that the business and affairs of Independence shall be managed by a Board of six Directors, and that all powers of the corporation except those specifically reserved or granted to the members by law or by the By-Laws, shall be exercised by the Board of Directors.
An examination of the By-Laws reveals that the only power granted or specifically reserved to the members is the power to expel present members and the power to elect new members. It is thus apparent that all other powers in the conduct of the corporate affairs are reposed in the Board of Directors by reason of Articles Eighth and Ninth of the Certificate of Incorporation and Article IV, Section 1 of the By-Laws.
A reading of the expressed purposes and objects of Independence makes it clear that the purpose of Independence is to give away its assets in order to achieve its broad object of promoting the well-being of mankind and the alleviation of human suffering. Furthermore, it is equally clear that Article Eighth of the Certificate of Incorporation and Article IV, Section 1 of the By-Laws confer upon the Board of Directors alone very broad discretionary powers in determining how best to achieve this corporate purpose. It is also of great significance that Article Third of the Certificate of Incorporation specifically directs the corporation "to use and apply the principal [of its endowment] and the income therefrom in the promotion of the corporate purposes." This direction in conjunction with Article Third, Section (b) authorizing the establishment and maintenance of charitable agencies and institutions clearly confers the power to grant from its capital funds an endowment to such institutions. Thus it is that we think the grant from capital to endow the William H. Donner Foundation is within the powers conferred upon the Board of Directors of Independence.
Appellant argues that the power to endow is limited to the endowment of agencies themselves actively and directly engaged in doing charitable work, and does *544 not extend to the endowment of a charitable corporation with purposes precisely similar to Independence and intended to operate in the same manner. Appellant seeks to have the activities of Independence limited to that of an "almoner of funds," that is, the dispenser of funds to those actively engaged in doing charitable work. We think, however, the attempted restriction is not justified. The direction to use both principal and income for the welfare of mankind is as broad as any charitable activity and is not necessarily limited to almsgiving. Springfield Y. M. C. A. v. Board of Assessors, 284 Mass. 1, 187 N.E. 104.
We are therefore of the opinion that the Board of Directors of Independence are authorized as a matter of law to grant capital funds to endow a charitable foundation similar in purpose to its own. Appellant seeks to make some point from the size of this grant. That, however, is at most a question of degree to be left to the judgment of the Board of Directors under familiar principles of corporate law.
There is no showing made in this record by the plaintiffs from which a conclusion could be reached that the grant of 55% of the corporate assets amounted to an abuse of judgment. On the contrary, it seems apparent from the record before us that the position in which Independence found itself prior to the grant, brought about by the disagreements and arguments of the two factions of members, had reached a point where the very purposes and objects of Independence were in danger. On this record, if any conclusion is warranted, it is that the plan carried out was properly arrived at as the only means available to carry out the corporate purposes which, in the last analysis, are the wishes of the creator of the foundation.
For the foregoing reasons, we affirm the entry of summary judgment for the defendant on the original complaint.
Appellant next charges an abuse of discretion by the Vice Chancellor in denying permission to her to file an amended complaint.
It will be recalled that prior to the decision on defendant's motion for summary judgment on the original complaint plaintiffs amended that complaint by the addition of a paragraph 10. Decision on this amendment was reserved by the Vice Chancellor. Subsequently, appellant, acting without her co-plaintiff, sought leave to file an amended complaint which in effect stated more elaborately the allegations of paragraph 10 with some additions. We consider it as though paragraph 10 is now incorporated in the amended complaint.
In substance the amended complaint re-alleges in more detail the original complaint and, in addition, charges that certain officers of Independence entered into a conspiracy with others to appropriate Independence funds for speculation as a result of which Independence suffered a substantial loss and, in addition, a substantial loss was suffered by appellant, herself, caused by the withdrawal by one of the "conspirators" from her funds under his control. In addition, it is alleged that the individual defendants Maes and Barbieri, who have not appeared in the cause, entered into a scheme to take over absolute control of Independence and that the split of Independence into two separate foundations was the culmination of that scheme.
As a result of these allegations in the amended complaint, appellant prays that the "conspiring" officers be ordered to account; that the grant to William H. Donner Foundation be set aside; that certain officers and directors of Independence be removed; that a meeting of members of Independence be ordered; and that a receiver be appointed to take charge of the assets of Independence.
The Vice Chancellor denied leave to file the amended complaint for the following reasons: (1) new causes of action not within the scope of the original complaint are asserted; (2) as to some of these causes it is doubtful that they are sufficient *545 in law; (3) the relief prayed for goes far beyond the relief requested in the original complaint; (4) the facts upon which the amended complaint is based were known to the appellant at least as early as the time of the addition of paragraph 10; and (5) the appellant does not charge nor allege facts which would demonstrate the alleged "conspiracy" to be fraudulent or illegal.
We have reviewed the record and are in accord with the stated reasons of the Vice Chancellor for denying leave to amend. We think there has been no abuse of discretion by him. Furthermore, since the relief sought in the amended complaint in the main is against individuals who have never appeared in the cause, or been brought into it by service of process, that fact could have been given as a conclusive reason for denying leave to amend. The denial of leave to file the amended complaint is affirmed.
By reason of all the foregoing, the judgment below is affirmed.